JEANNE C. DOWLING & another[1] vs. BOARD OF HEALTH
OF CHILMARK.

No. 89-P-252.

Dukes County. March 9, 1990. - April 23, 1990.

Present: WARNER, C.J., KASS, & FINE, JJ.

Zoning, Lot size, Exemption. Words, "Remainder lot."

Where a certain parcel of land, remaining in the ownership of a person
who had conveyed adjoining land, was not sufficiently defined as a sepa-
rate lot on any recorded deed, plan, or other instrument before a town's
zoning by-law took effect, the parcel was not entitled to treatment as a
buildable lot by virtue of the "grandfather" provisions of G. L. c. 40A,
§ 6. [549-551]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 22, 1988.

Motions for summary judgment were heard by Andrew
Gill Meyer, J.

E. Peter Mullane for the plaintiffs.

Thomas B. Bracken for the defendant.

FINE, J. The plaintiffs own two lots in Chilmark separated
by Tabor House Road, a way used by the public at least
since 1968, and probably since 1849. The lot easterly of the
road contains over ten acres. The lot westerly of the road
(the subject lot) is much smaller, containing approximately
17,000 square feet. Both lots are located in an area zoned for
residential or agricultural use. The plaintiffs want to con-
struct a residence on the subject lot, but it is significantly
undersized according to the dimensional requirements in
Chilmark's zoning by-law in effect since 1972.[2]

---

[1] Frank J. Nuovo.

[2] A two-acre minimum requirement is applicable.

The plaintiffs filed an application to the board of health of Chilmark for a variance from its septic system setback requirements. The application was denied. They brought this action in the Superior Court seeking, among other things, to have the denial of their application annulled. The board of health moved for summary judgment on the ground that the subject lot is not a buildable lot because the plaintiffs were not entitled to "grandfather" protection under G. L. c. 40A, § 6, and the propriety of the board's decision on the septic system setback requirement, therefore, was moot. The plaintiffs filed a cross motion for partial summary judgment seeking a determination that the right to construct a residence on the lot was protected by G. L. c. 40A, § 6. The board's motion was allowed, and the plaintiffs' motion was denied. On appeal both sides have addressed the issue of the plaintiffs' right to "grandfather" protection under the statute. We decline to consider on our own motion the unusual procedural route to this court and, in particular, the standing of the Chilmark board of health to raise the issue. On the merits, we affirm.

General Laws c. 40A, § 6, fourth par., as inserted by St. 1975, c. 808, § 3, in pertinent part, provides: "Any increase in area . . . requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner[,] was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage." The subject lot meets the minimum area and frontage requirements referred to in the statute. Further, we accept the plaintiffs' contention that the subject lot is not in common ownership with "adjoining land." Although also owned by the plaintiffs, the lot easterly of Tabor House Road is separated from the subject lot by the road, a substantial physical barrier which, for practical purposes, prevents use of the two

parts of the property as a unit. Compare *Clarke* v. *Board of Appeals of Nahant*, 338 Mass. 473, 478 (1959).[3]

The question before us is whether the subject lot was sufficiently defined as a separate lot on any recorded deed, plan, or other instrument, before the Chilmark zoning by-law took effect in 1972.[4] See *Adamowicz* v. *Ipswich*, 395 Mass. 757, 761 (1985). The plaintiffs concede that the first time the subject lot was separately defined on a plan was in 1984, and the first time it was separately defined in a deed was in 1985, when both lots were conveyed by one deed to the plaintiffs. They rely, instead, on the claim that the subject lot shows up in the land records as a "remainder lot." In *Clarke* v. *Board of Appeals of Nahant*, 338 Mass. at 478, the court made reference to such a concept where there is "land remaining after an owner . . . conveyed part of his land, describing it by metes and bounds but without describing in any way the land to which he retained title." We accept the general proposition that a deed or a plan, or a combination of such instruments, may, for purposes of G. L. c. 40A, § 6, sufficiently define a lot remaining in the ownership of a party who has conveyed other land.

The recorded 1971 deed of the prior owner of the subject lot conveying another lot, also bordering Tabor House Road, and adjoining the subject lot on one side, describes the southern boundary of the subject lot. The plaintiffs refer to various other documents which, pieced together and in combination with the 1971 deed, they contend, describe the subject lot as a separate lot in existence prior to 1972. We have examined those documents and do not agree that, for the purposes of G. L. c. 40A, § 6, they sufficiently delineate the subject

---

[3]Apart from the plaintiffs' allegation, there is nothing in the record to indicate that the subject lot conformed to the dimensional requirements in effect prior to 1972. However, the defendant has not disputed the allegation.

[4]Conceivably, the by-law includes a definition of "lot." However, since the by-law was not made part of the record, it is not before us and may not be judicially noticed. *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 8 (1981).

lot.[5] General Laws c. 40A, § 6, is intended to protect a once valid residential lot from being rendered unbuildable by the enactment of more stringent zoning requirements. See *Sturges* v. *Chilmark*, 380 Mass. 246, 261 (1980). The absence of a recorded document specifying the subject lot as a separate one, whether as a "remainder lot" or otherwise, is some indication that, before 1972, no one had any expectation that the subject lot would be developed for residential purposes. Given the substantial discrepancy as to size between the subject lot and all the other lots in the area, it is more logical to assume that the prior owners contemplated disposing of their property in large parcels and were willing to leave the subject lot vacant.

Moreover, the legislative history suggests the importance placed on notice to the public based upon recorded documents. With some variation in the language, the relevant statute has always required, as a prerequisite for grandfather protection, proof of the existence, prior to the otherwise applicable zoning regulation, of some recorded instrument showing a lot. See St. 1958, c. 492; St. 1961, c. 435, § 1; St. 1975, c. 808, § 3. Before the 1975 statute was enacted, adopting the present language of G. L. c. 40A, § 6, the Legislature considered, but rejected, a version which would have afforded grandfather protection without any reference to a recorded instrument showing a lot.[6] We assume, based

---

[5]It may be that careful examination of documents in the record would reveal the boundaries of the "remainder" lot. These documents include an 1849 grant of a seventeen-acre parcel which, presumably, establishes the lot's western boundary as a stone wall and its northern border as land of an adjoining landowner; a 1969 deed and plan also showing a portion of the western boundary as a stone wall, and the layout of the pertinent section of Tabor House Road; and a subdivision plan, recorded in 1971, showing the approximate width of Tabor House Road, and the three hundred or so feet along the way which the plaintiffs claim forms the remaining eastern boundary of the lot. See *Temple* v. *Benson*, 213 Mass. 128, 132 (1912); *Hill* v. *Taylor*, 296 Mass. 107, 115-116 (1936). The record also contains various unrecorded plans displaying the road, including a layout surveyed for the town, and a sketch of land, dated 1970, as well as recorded plans and a deed which postdate the zoning amendment.

[6]Grandfather protection would have extended to "a lot for residential use which, at the time of the first notice of the public hearing . . . [relative

upon this history, that the Legislature was concerned with affording reasonable notice to the public as a minimal prerequisite for grandfather protection. Reasonable public notice would be lacking if, as in this case, a painstaking historical survey of several possibly unrelated instruments were necessary to ascertain the existence of the lot. Considering the eventual elimination of nonconforming uses as an objective underlying zoning regulations (see Anderson, American Law of Zoning § 6.07 [3d ed. 1986]; *Strazzulla* v. *Building Inspector of Wellesley,* 357 Mass. 694, 697 [1970]), the Legislature's requirement that, to receive grandfather protection, a lot be reasonably designated on a recorded instrument, even if as a "remainder lot," does not seem unreasonable.[7] Thus, we conclude that the plaintiffs did not show, as they were required to do to overcome the board's motion for summary judgment, that the subject lot is a buildable lot under G. L. c. 40A, § 6.[8]

*Judgment affirmed.*

---

to zoning changes], was not held in common ownership with any adjoining land, . . . ." 1974 House Doc. Nos. 5864 at 11, 6480 at 9; see also 1975 House Doc. Nos. 5457 at 10, 5600 at 9.

[7]If an exact description of a "remainder lot" is available from a perusal of one or two recorded instruments, the lot might qualify as a recorded lot for purposes of G. L. c. 40A, § 6.

[8]The appellants also assert that denial of grandfather protection would result in an unconstitutional taking of property without compensation. We do not decide this issue because it was not raised below on the motion for summary judgment. See *Warren* v. *Zoning Bd. of Appeals of Amherst,* 383 Mass. at 9.