MAUREEN BLASCO & others[1] *vs.* BOARD OF APPEALS OF
WINCHENDON & another[2]
(and a companion case[3]).

Nos. 90-P-338 & 90-P-339.

Suffolk. April 24, 1991. - July 8, 1991.

Present: SMITH, FINE, & LAURENCE, JJ.

*Zoning*, Nonconforming use or structure, Special permit, By-law. *Statute*,
    Construction.

Provisions in the zoning by-law of a town providing for continuation of a
    prior nonconforming use and authorizing by special permit alteration of
    a nonconforming use of a building or structure did not authorize the
    town's zoning board of appeals to grant a special permit to change the
    nonconforming use of certain land from a gravel removal operation to a
    demolition landfill. [34-35]
General Laws c. 40A, § 6, did not require a municipality to allow a land-
    owner to change the valid prior nonconforming use of its land from a
    gravel removal operation to a demolition landfill, which a local zoning
    by-law did not permit, upon a finding by the appropriate municipal
    body that the proposed nonconforming use was not substantially more
    detrimental to the neighborhood than the existing nonconforming use.
    [35-39]

CIVIL ACTIONS commenced in the Land Court Department
on January 23, 1989, and January 27, 1989, respectively.

The cases were heard by *Robert V. Cauchon*, J., on a mo-
tion for partial summary judgment.

*Anton T. Moehrke* for C. J. Mabardy Washed Sand &
Gravel, Inc.

*Stephen D. Anderson* for the plaintiffs.

*June S. Riddle* for the Planning Board of Winchendon &
another.

[1]Joseph Cote, Leona Goodwin, Derek Knerr, and Rudy Perkins.
[2]C. J. Mabardy Washed Sand & Gravel, Inc.
[3]A suit against the same defendants, brought by the planning board of
Winchendon and the board of selectmen of Winchendon.

FINE, J. C. J. Mabardy Washed Sand and Gravel, Inc. (Mabardy), operates a gravel pit from a 148-acre site in a residentially zoned district off River Street in Winchendon as a protected nonconforming use. On July 29, 1988, Mabardy applied to the Winchendon board of appeals (board) for a special permit to change its nonconforming use from a gravel removal operation to a demolition landfill. On December 20, 1988, after six evenings of hearings, by a four to one vote, the board issued a lengthy decision in which it determined that the proposed use would not be more detrimental to the neighborhood than the preexisting use, and it granted the special permit, subject to numerous conditions.[4] A group of citizens residing in the vicinity of the proposed landfill appealed from the board's decision to the Land Court pursuant to G. L. c. 40A, § 17, as did the Winchendon planning board and board of selectmen. The appeals were consolidated, and the judge, acting on a motion for partial summary judgment, determined that neither the Winchendon zoning by-law, nor G. L. c. 40A, § 6, authorized the board's grant of the special permit to operate the demolition landfill. He, therefore, ordered the permit annulled. Final judgment was entered pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), and Mabardy appealed.

We first consider whether the Winchendon zoning by-law authorizes the board to approve the proposed change of use of Mabardy's land. Not finding that authority in the by-law, we next consider whether G. L. c. 40A, § 6, by itself, entitles a landowner to make such a change upon a finding that the proposed nonconforming use is not substantially more detrimental to the neighborhood than the existing nonconforming use. In other words, does G. L. c. 40A, § 6, require that municipalities allow such changes? We think it does not and, therefore, affirm the judgment of the Land Court.

---

[4]The board also voted to allow expansion of Mabardy's existing gravel removal operation. That vote was also challenged in the G. L. c. 40A, § 17, appeal to the Land Court. Summary judgment on that aspect of the case was denied, however, upon the determination that there existed issues of material fact; and that part of the case is still pending in the Land Court.

1. *The Winchendon zoning by-law.* Article 3.41 of the by-law provides for continuation of prior nonconforming uses. It provides, further: "A nonconforming use, however, shall not be changed or extended to a conforming use unless a special permit is obtained from the Board of Appeals." A landfill is not on the list of permitted uses, and Article 3.1 of the by-law provides that any use not listed "shall be construed to be prohibited." As a landfill could not be a "conforming use," Article 3.41 provides no authority for the proposed change. The only other relevant provision, Article 3.43,[5] provides that the board may authorize by special permit "alteration"[6] of a nonconforming use of a building or structure. The provision does not mention changes in nonconforming uses of land. The only reference to nonconforming uses of land in Article 3.43 is as follows: "Nonconforming use of land shall not be extended beyond the boundaries of the property within which the use occurred at the time of adoption of this bylaw." A change of use, however, is not an extension of a nonconforming use.

The intent of the by-law not to permit changes in nonconforming uses of land, as opposed to buildings and structures, seems clear from its express terms. This is particularly so in light of the provisions relating to nonconforming uses in the by-law as it preexisted the present version. The earlier version expressly provided that nonconforming uses of land

---

[5]Article 3.43 provides in its entirety:

"Nonconforming use of land shall not be extended beyond the boundaries of the property within which the use occurred at the time of adoption of this bylaw.

"The Board of Appeals may authorize by Special Permit a nonconforming use of a building or structure to be altered or enlarged provided that:

a. such alteration or enlargement does not result in a floor area increase of more than 25 percent of the original floor area in use at the time of adoption of this bylaw, and,

b. such alteration or enlargement shall be in conformity with the dimensional requirements and other pertinent provisions of this bylaw."

[6]We assume throughout that there is no difference between "alteration" of a use and a "change" of use.

could be changed to certain other nonconforming uses upon a finding by the board that the changed use would not be substantially more detrimental to the neighborhood.[7]

Contrary to Mabardy's contention, therefore, the present Winchendon by-law is not "permissive in spirit" in its treatment of changes in nonconforming uses of land. Contrast *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 478 (1986), and cases cited. It has not been argued, nor would we say, that a legislative distinction between land, on the one hand, and buildings and structures, on the other, for these purposes, would be improper.

2. *The effect of G. L. c. 40A, § 6, on changes in nonconforming uses.* We must decide whether G. L. c. 40A, § 6, entitles a landowner to change a valid prior nonconforming use which a local zoning by-law does not permit, assuming a finding by the appropriate municipal body that the new use would not be substantially more detrimental. This question of statutory interpretation is one that has previously been identified, but not decided. See *Sullivan* v. *Board of Appeals of Harwich*, 15 Mass. App. Ct. 286, 290 n.2 (1983); *Murray* v. *Board of Appeals· of Barnstable*, 22 Mass. App. Ct. at 477 n.9. See also Healy, Massachusetts Zoning Practice Under the Amended Zoning Enabling Act, 64 Mass. L. Rev. 157,

---

[7]Section 8(B) of the 1958 Winchendon zoning by-law stated, with respect to changes in nonconforming uses:

"Such [nonconforming] building or structure or use of building, structure or land may be altered or enlarged to twenty-five per cent (25%) of the original floor area or land area in use at the time of the adoption of this by-law, and to a greater extent when approved by the Board of Appeals, provided the alteration or enlargement is on the same or an adjacent parcel of land in the same or joint ownership of record at the time of the adoption of this by-law or any amendments thereto, and the Board of Appeals shall rule that such alteration or enlargement would not be substantially more detrimental or injurious to the neighborhood. The use of any non-conforming building, structure or land may be changed to a use permitted in the most restricted district in which the present use would be conforming provided that when so changed, it shall not be returned to a use permitted in a less restricted district."

161 (1979); Healy & Mack, Massachusetts Zoning Manual 6-17 (1989).

The first two sentences of G. L. c. 40A, § 6, as inserted by St. 1975, c. 808, § 3, have been described as "difficult and infelicitous." *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. 53, 55-56 (1985). See also *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 20 (1987), and cases cited. The statute provides in those two sentences as follows:

> "Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence . . . but shall apply to any change or substantial extension of such use. . . . Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood."

The language suggests, on the one hand, that local zoning by-laws govern the extent to which there may be changes in nonconforming uses and, on the other, that changes in nonconforming uses may be made by a property owner so long as the appropriate municipal body makes the required finding. The two sentences are either contradictory to each other, or the second sentence provides for an exception to the rule stated in the first sentence. Such an exception, however, would swallow the rule. The Legislature had the ability to use language clearly providing either that no by-law could forbid such changes, see, e.g., G. L. c. 40A, § 3, or that no such changes could be made except as expressly authorized by the local by-law, see, e.g., G. L. c. 40A, § 10, second sentence. We conclude that, with respect to the question before us, the language is ambiguous. We proceed, therefore, to consider the legislative history of G. L. c. 40A, § 6, and the

policies relating to nonconforming uses likely to have affected the legislative intent.

The legislative history suggests an intent to allow local zoning authorities, through their by-laws, to regulate and even prohibit changes in nonconforming uses. "Prior to the 1975 amendment, the Zoning Enabling Act allowed a town to forbid any changes in nonconforming uses, and required a unanimous vote by a zoning board of appeals to decide in favor of any application under any zoning ordinance or by-law. See St. 1954, c. 368, §§ 5 and 19." *Shrewsbury Edgemere Assocs. Ltd. Partnership* v. *Board of Appeals of Shrewsbury*, 409 Mass. 317, 322 (1991). See *Inspector of Bldgs. of Burlington* v. *Murphy*, 320 Mass. 207, 209-210 (1946); *Chilson* v. *Zoning Bd. of Appeal of Attleboro*, 344 Mass. 406, 412-413 (1962). In the *Shrewsbury* case, the issue was the number of votes required by G. L. c. 40A, § 6, to approve a change in nonconforming use. As the particular local by-law, unlike the Winchendon by-law, expressly permitted changes in nonconforming uses, that decision has no direct bearing on the present case. The court's comment, at 322, that, in enacting G. L. c. 40A, § 6, the Legislature "liberalized" the rules relating to changes in nonconforming uses must be read as relating specifically to the relaxation of the earlier requirement of a unanimous vote to allow such a change.

The court had occasion in the *Shrewsbury* decision to refer to the legislative history of G. L. c. 40A, § 6, as follows: "The 1975 revision of the Zoning Enabling Act, St. 1975, c. 808, § 3, resulted from a report to the Legislature by the Department of Community Affairs, which recommended a number of changes. See 1972 House Doc. No. 5009, Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act (report)." *Id.* at 320. We refer, therefore, to that report. In discussing changes in nonconforming uses, the report notes, at 39, the unanimity of authoritative opinion that "the ultimate objectives of zoning would be furthered by the eventual elimination of nonconformities in most cases" and the conse-

quent legislative prohibition or regulation of, among other things, changes of use. The report then points out, at 43-44, that strict enforcement of rules prohibiting changes may, in certain situations, have a detrimental effect on a community. An example would be when a nonconforming use continues after becoming uneconomical and the structure containing the use falls into disrepair. See *Chilson* v. *Zoning Bd. of Appeal of Attleboro*, 344 Mass. at 412. To meet that concern, the report, at 44, recommends "that the enabling act explicitly *recognize the validity of regulations* which authorize such a change of use upon application to the board of appeals, after a showing that the proposed change of use will be less detrimental to the neighborhood than the existing use" (emphasis added). The italicized portion of the recommendation, contained in the report on which G. L. c. 40A, § 6, was based, was clearly directed towards the kind of local regulations which should be recognized and not what right a property owner might have with respect to the use of his property.[8]

Earlier drafts of G. L. c. 40A, § 6, contained language similar to that now in the second sentence of § 6, but in a provision included in the first sentence rather than in a separate sentence. See 1974 House Doc. Nos. 5864 at 10, 6480 at 8; 1975 House Doc. No. 5457 at 10. Those drafts more clearly indicated a legislative intent to allow local regulation, or even prohibition, of changes in nonconforming uses. One might speculate that the change to the present form, with two separate sentences, was made carelessly and at the last minute to avoid the long and cumbersome first sentence in the earlier drafts. Compare *Baldiga* v. *Board of Appeals of Uxbridge*, 395 Mass. 829, 835 (1985). In any event, there is no indication in any report of which we are aware that the Legislature intended at the last minute either to bestow vastly expanded rights on owners of property with nonconforming uses or to take away rights historically residing with the local zoning authorities.

---

[8]The language in the department's recommended statute would have been clearer on the point than the version enacted.

Moreover, whatever harshness might result from a particular town by-law's strict regulation of changes in nonconforming uses is justified by policy considerations which generally favor their eventual elimination. See *Strazzulla* v. *Building Inspector of Wellesley*, 357 Mass. 694, 697 (1970); *Dowling* v. *Board of Health of Chilmark*, 28 Mass. App. Ct. 547, 551 (1990); Anderson, American Law of Zoning §§ 6.07, 6.35 (3d ed. 1986), and cases cited. See also G. L. c. 40A, § 5, as in effect prior to St. 1975, c. 808 (permitting the regulation of the "non-use of non-conforming buildings and structures so as not to unduly prolong the life of non-conforming uses"). If the law were such that any property owner had the right to change a nonconforming use to any other use so long as the new use was not substantially more detrimental to the neighborhood, nonconforming uses would tend to exist in perpetuity, and any comprehensive municipal plan for regulating uses in particular districts would never fully take effect. Further, the interpretation of G. L. c. 40A, § 6, advanced by Mabardy would tend to detract from another principle underlying the Zoning Enabling Act, that of allowing the maximum scope for local self-determination. See St. 1975, c. 808, § 2A, and the Home Rule Amendment, art. 2, § 1, as appearing in art. 89 of the Articles of Amendment to the Massachusetts Constitution. Compare *Collura* v. *Arlington*, 367 Mass. 881, 885 (1975).

Based on both the legislative history of G. L. c. 40A, § 6, and the policies underlying it, we resolve the ambiguity in the statute by recognizing the continuing right of a municipality through its zoning by-law to regulate or forbid changes in nonconforming uses. Winchendon's by-law does not permit the change proposed by Mabardy. Winchendon is free to amend its by-law to allow such changes. Should Winchendon so amend its by-law, any change authorized by it may take effect so long as the finding required by § 6 is made.

*Judgment affirmed.*