O’Neill, J.
STATEMENT OF CASE
This case presents an appeal by the plaintiffs, Falmouth Planning Board and Board of Selectmen under, G.L.c. 40A from a decision by the defendant Falmouth Board of Appeals to grant a special permit to the defendants, Stephen C. and Kathryn Kyros, for the operation of a Honey Dew Donut Shop with a drive-through window. Between August 24, 1994 and October 3, 1994, the defendant Board of Appeals took a number of votes relative to the Kyros application for a Honey Dew franchise with a drive-up window. The franchise is presently in operation and its legality is not at issue. The issue before the court is the last plan for the drive-up window approved by the Board of Appeals on October 3, 1994.
FINDINGS OF FACT
1. Mr. and Mrs. Kyros are operating a Honey Dew Donut Shop on that section of Route 28, Falmouth, MA, known as Teaticket Highway. The locus is zoned as a business district B2.
2. The Falmouth Zoning By-law §240-51C permits fast food restaurants in B2 districts only via a special permit. Additionally, the by-law requires that fast food restaurants in B2 districts are subject to multiple review in accordance with §240-220 of the by-law. However, final authority to grant or deny a special permit rests solely with the Board of Appeals.
3. The locus in question has been used for restaurant purposes since 1958, first by Kentucky Fried Chicken and later by Taco Shell. Neither operated a drive through window service at the locus. Teaticket Highway is a heavily traveled commercial thoroughfare. Abutting the donut shop is a golf course driving range and a miniature golf course operation. A small group of stores and restaurant, commonly referred to as a strip mall is located across the street.
4. Teaticket Highway (Route 28) carries between 22,000 and 25,000 vehicles per day during the summer. The winter months are also busy. The number of trips generated by the Honey Dew operation would be 64 per hour without drive-in window and 94 trips per hour with the drive-in window, an increase of approximately one-third. The observations of Gary L. Hebert, a traffic engineer with twenty-six years of experience at the site in the dead of winter showed trips in excess of the number previously indicated which may be attributed to the excellent product being served at the locus. The busiest time at the donut shop is between 7:30 and 9:00 a.m. which is also a busy time on Route 28 due to the presence of school and commuting traffic during those hours.
5. The defendants would be entitled to a drive-through window if same could be designed in accordance with the standards of the Falmouth Zoning By-law §240-216. Those standards include among others, (c) Impact on Traffic Flow and Safety. Unfortunately, the layout of the locus and the location of the building do not appear to permit a drive through window that will comply with the conditions contained in the by-law without relocation of the building.
The first plan presented called for traffic to enter on the right, receive drive-in service, go around the build *418 ing and leave on the right heading in the opposite direction. This plan was feasible from a traffic flow perspective but not feasible due to the closeness of the building to the adjoining property to the north.
6. The plan for the proposed drive through restaurant approved on October 3, 1994 is of such poor design that it does not meet the safety standards imposed by the zoning by-law. The compass directions involved are slightly confusing but the court relies on a plan introduced as Exhibit 14 which shows Teaticket Highway running generally from southwest to northeast with the locus on the east side of the highway. There is a single entrance and exit via a 36’ driveway. All traffic on the site would proceed in the English style of traffic direction, entering on the left, passing on the left and exiting on the left. This is in direct contradiction to what the average American motorist would expect in the usual flow or pattern of traffic.
A person proceeding northeasterly on Route 28 in a line of traffic observing the Honey Dew sign and desirous of entering onto the premises would, upon slowing down, and proceeding to turn in on the right side of the curb cut come face to face with the traffic exiting on the left. The sudden application of brakes on Route 28 upon coming face to face with a vehicle already in the position that you desire to occupy could result in an accident at almost any time of the year. A motorist proceeding southwesterly on Route 28 and observing the Honey Dew sign who then put on a left directional signal to cross the highway and enter the premises would be confronted with one of two propositions. If there was no traffic coming in the opposite direction and they crossed the highway where they expected to enter they again could be faced with a vehicle exiting the premises on the left. Very unfortunate consequences could result. If the same motorist was forced to stop and await traffic proceeding in the opposite direction they would observe that they were in a position where they couldn’t enter upon the premises because they had passed the left side of the curb cut where they were expected to enter.
Assuming that at some point in time, the locus became so popular that vehicles were forced to queue up on Route 28, a situation considered by the Board of Appeals, the present traffic configuration would have the vehicles queuing up directly in the path of and blocking the vehicles attempting to exit the premises. I am not a traffic engineer but I respectfully suggest common sense tells you that this would not work. Lastly, if traffic going in either direction were to enter upon the premises in the usual American fashion, there being no vehicles exiting at that moment, they would quickly enter upon a traffic pattern where they had to cross the path of the vehicles exiting from the left in order to go to the left to enter into the drive through area. This would create confusion on the site for drivers and pedestrians alike. For all of these reasons, the court agrees with Traffic Engineer Hebert that this is an unsafe and poor design.
7. The final action of the Board of Appeals may have been taken in haste in order to assist a most worthy applicant. Some indication of that fact would be found in the three conditions attached to the approval of the proposal. Condition no. 2 provides that the applicant “work in conjunction with a town engineer and town planner to improve the design of the traffic flow on the site” with “final approval of any changes subject to administrative review by this board.” Condition no. 3 requires “applicant shall take necessary steps to ensure that there will be no vehicular waiting traffic on Route 28 entering the property.” The court finds that these conditions were imposed because of the very problems set forth by the court in the previous finding and the lack of any solutions thereto at the time of approval. Unfortunately, the conditions do not contain any defined standards by which the problems must be resolved.
RULINGS OF LAW
1. The Board of Appeals has discretionary power to grant or deny a special permit and a decision of a local board will not be disturbed unless it is based on an untenable ground or is unreasonable, whimsical or capricious — that is to say arbitrary. Federman v. Bd. of Appeals of Marblehead, 35 Mass.App.Ct. 727, 730 (1994).
2. “The board must act fairly and reasonably on the evidence presented to it keeping in mind the object and purposes of the enabling act and the by-law. MacGibbon v. Bd. of Appeals of Duxbury, 356 Mass. 635, 639 (1970).
3. Falmouth By-law §240-3c provides that any change, extension or alteration of a preexisting nonconforming use shall not be substantially more detrimental to the neighborhood than the existing nonconforming use of the structure.
4. In considering the issue of detriment the Falmouth Zoning By-law, §240-216 provides that the board shall consider the impact on traffic flow and safely.
5. The court finds that the relief granted was in excess of the authority of the Board of Appeals because the traffic pattern for the drive-in window approved by the board was of poor design and unsafe for customers on the premises and travelers on the highway. Inappropriate zoning relief will be annulled by the court as in excess of the Board of Appeals’ authority. Blasko v. Bd. of Appeals of Winchendon, 31 Mass.App.Ct. 32, 33 (1991).
6. No one has an absolute right to a special permit. S. Kimball Fischer realty Trust v. Bd. of Appeals of Concord, 9 Mass.App.Ct. 477 (1980).
7. General Laws, c. 40A, §9 allows a permit-granting authority to impose conditions and safeguards on the issuance of a special permit. The court will not, *419 however, allow conditions whereby the permit-granting authority delegates matters to another board or reserves for itself important substantive decisions. Tebo v. Bd. of Appeals of Shrewsbury, 22 Mass.App.Ct. 618, 624 (1986). The primary and paramount issue in the present case is how the traffic entering and exiting the subject premises would be integrated into the traffic on Route 28. This is the very issue which the board left open under conditions no. 2 and no. 3 for the applicant to work out with the town engineer and town planner to improve the design of traffic flow and to take necessary steps to ensure there would be no vehicular waiting on Route 28. The conditions contained no defined standards as to what is to be done and leaves to the Board an important future decision of substance. Therefore, the decision cannot stand under the criteria set forth in Tebo, supra, and Weld v. Bd. of Appeals of Gloucester, 345 Mass. 376 (1963).
ORDER
Based upon all of the foregoing, it is hereby ORDERED that Judgment enter that the decision of the Board granting a drive-in window on the premises of the defendant Kyros based upon an unsafe traffic pattern is in violation of the zoning by-law and as such the decision is legally untenable and cannot stand. In addition, the decision is incomplete as it delegates matters to other persons and reserves to itself important substantive decisions. It is therefore ORDERED that the decision of the Board exceeded its authority and is ANNULLED.