Agnes, A. J.
This is a civil action pursuant to G.L.c. 40A, § 17, in which the plaintiffs challenge the decision of the Zoning Board of Appeals of the City of Lawrence to grant a Special Permit to defendant Kevin Melvin which gives him permission to operate a used motor vehicles sales business at 63 Winthrop Avenue in Lawrence. For the reasons which follow, I conclude that the Zoning Board of Appeals of the City of Lawrence exceeded its authority, and order that its decision should be annulled.
BACKGROUND
The court conducted a jury waived trial and heard testimony from Mr. Hightis, the owner of the locus known as 63 Winthrop Street in Lawrence, the defendant Kevin Melvin who leases the property, and the plaintiff Mrs. Saffie. The court received into evidence twenty exhibits, including numerous photographs of the locus as well as a plan of renovations to be undertaken by defendant Melvin, and a complete copy of the Revised Zoning Ordinance of the City of Lawrence (exhibit 1) (hereafter, “The Ordinance”). Based upon a consideration of the evidence, I make the following findings and rulings.
The premises known as 63 Winthrop Street was purchased in the late 1940s by Mr. Highitis’s father and has been in continuous use throughout the years as an automobile repair shop. Prior to the mid-nineties, there was a house on the lot as well as the cinder-block garage structure that is all that remains today. The house was torn down in 1994 or 1995. See exhibits 2 & 4. The locus is in a residential neighborhood bordering on a commercial zone.
The garage faces Winthrop Street which is a heavily traveled roadway and one of the busiest streets in the city. Trucks and motor vehicles exit from Interstate Route 495 (only about one mile away) and travel along Winthrop street into the heart of the City of Lawrence. In the 1980s Winthrop Street went from a 2 lane roadway to a 4 lane roadway with the result that *36 vehicular traffic was brought much closer to the lot lines. The commercial character of the area is illustrated in exhibit 16 which is a photograph of Winthrop Street looking toward Interstate Route 495 from a vantage point across the street from the plaintiffs residence. The nearby cross street is Grafton street which also has a commercial character and serves as a pass through for trucks coming to Lawrence from Interstate Route 495. See exhibit 17. There is a strip mall located further down Grafton Street. See exhibit 18.
There is a residential home belonging to the plaintiffs that is next door to the empty portion of the locus where the home was formerly situated. See exhibit 8. There is a car dealership directly across the street from the plaintiffs home and the locus. See exhibits 6, and 13 through 16. A number of other business establishments are in the vicinity including a package store (exhibit 17), and a U-Haul Truck rental center (exhibit 11). The closest other home is about ¼ mile away.
The operator of the premises, defendant Kevin Melvin, lives in North Andover, Massachusetts. He has operated an automobile repair business from the locus known as “Kevin’s Auto Repair” for the past 12-15 years. He does not do body work, and does not repair any heavy trucks. Primarily he does automobile tuneups and brake repairs. The defendant Melvin does not make use of the vacant lot portion of the locus.
The defendant Melvin has developed plans for significant improvements to be made in the garage structure if he prevails in obtaining approval to operate a used car business. See exhibit 19. For example, he plans to add cedar shingle to the roof, to re-surface the existing wood, paint the facade, install new windows, and exterior lighting.
DISCUSSION
1. Introduction. There is no dispute between the parties over the fact that the defendant Melvin’s property is located in an “R-2 district.” This is a “two family residential district.” See the Ordinance §29.6 (readopted February 17, 1998) (exhibit 1). This classification permits “single and two family housing at medium density.” The Ordinance, §29.10. There is also no dispute that the locus is on the border with a commercial district that includes existing businesses such as a liquor store, a used car lot and a nearby strip mall. Finally, there also is no dispute that the operation of an automobile repair facility at 63 Winthrop Street in Lawrence qualifies as a preexisting, nonconforming use under the Ordinance.[2]
2. The decision of the Zoning Board of Appeals. The Zoning Board of Appeals of the City of Lawrence conducted a public hearing in this matter on March 20, 2000. The Board heard from several witnesses including counsel for the parties, the plaintiffs Pierietta and Michael Saffrie, Mrs. O’Callaghan from the city’s Licensing Board, Mr. Leonard Degnan, former member of the Zoning Board, the defendant Melvin, and attorney Boddy, the city’s Land Use Planner.
The Zoning Board determined that the current garage and the empty lot between it and the plaintiffs’ residence are one property even though both are located in a residential district. In particular, the Zoning Board found that,
Given that the sign had not been removed for auto sales it was always contemplated that this type of business would continue.[3] The applicant is presently entitled to store damaged vehicles in disrepair at this site. The proposed use would thus be an improvement. While the site is within an R-2 zone and directly abuts two residential parcels, it is located along one of the busiest streets in the City, and is located opposite a major shopping plaza and other intensively commercial uses.
Plaintiffs Complaint, exhibit one (Decision of the Zoning Board) at 7.[4]
The Board reasoned that under Section 29-13(f) of the Ordinance, it was authorized to grant a special permit to modify a preexisting, nonconforming use upon finding “that such change, extension or alteration is not substantially more detrimental that (sic) the existing nonconforming use ... to the neighborhood.” The Ordinance §29-13(f), exhibit 1 at 21. The Board further assumed that this authority was conferred on it by statute as well. See G.L.c. 40A, §6. The Board considered the additional requirements set forth in §29 -21 (a) of the Ordinance for granting special permits. These include consideration of traffic, 'whether the use will be detrimental to the area, whether the use will result in any objectionable environmental hazards, and whether its hours of operation will be compatible with the neighborhood. The Board addressed these requirements as follows:
The Board found the proposed use at this location: 1. Would not generate traffic detrimental to the area; 2. The use will not be detrimental to the area; 3.The use will not generate objectionable fumes or hazardous wastes; and 4. The hours of operation will be compatible with the businesses in the area.
Plaintiffs Complaint, exhibit one (Decision of the Zoning Board) at 8.
3. The Zoning Board lacked the authority to issue a special permit. Under §29-9(c) of the Ordinance, “[t]he following uses are prohibited in all zoning districts:. .. used car lots except that used vehicle sales shall be permitted as an accessory use to new vehicle sales in 1-3 districts and shall be permitted as an accessory use as a consequence of a special permit in 1-2 districts [amended 1/3/95].’’ See also §29-11 Table 1, “District B. Commercial” (prohibiting “automobile or other vehicle sales, and service, used”).
Nonconforming uses are covered in Article IV of the Ordinance. Consistent with state law, see G.L.c. 40A, §6, the Ordinance provides that a “lawfully existing *37 use” at the time of the adoption of a change in the local zoning law shall be regarded as a “preexisting nonconforming use.” The Ordinance §29-13(c). However, the Ordinance further provides that “(t]his ordinance and any amendments to this ordinance shall apply to: (1) [a]ny change or substantial extension of a nonconforming use . . .” The Ordinance §29- 13(d)(1). Clearly, the use of the locus as a used car lot represents a “change” from the preexisting use of the property as an automobile repair facility. Thus, quite apart from whether the change from an auto repair facility to a used car lot is “substantially more detrimental than the existing nonconforming use to the neighborhood,” G.L.c. 40A, §6, or not, the defendant Zoning Board of Appeals is authorized to grant a special permit only if the change in the preexisting, nonconforming use is consistent with the zoning ordinance at the time the change is proposed. See Rockwood v. Snow Inn Corp., 409 Mass. 361, 363-64 (1991) (interpreting the first paragraph of G.L.c. 40A, §6 to require that a preexisting, nonconforming use must comply with subsequent changes in the zoning by-law before the permit granting authority of a municipality is authorized to approve a change or extension of such use).
This principle is illustrated by Blasco v. Board of Appeals of Winchendon, 31 Mass.App.Ct. 32 (1991). In Blasco, the applicant for a Special Permit operated a gravel pit as a nonconforming use from a 148 acre site in a residentially zoned district in Winchendon. He applied for a special permit to change the use from a gravel pit to a demolition landfill. The permit granting authority issued the special permit based on a determination made under G.L.c. 40A, §6 that the proposed change would not be more detrimental to the neighborhood than the preexisting use. The Winchendon zoning by-law did not include a landfill as a permitted use and provided that those uses that were not permitted were prohibited. Although the by-law permitted “alterations” of the use of nonconforming buildings or structures, it did not give authority for “changes” in the uses of nonconforming land. The Appeals Court reasoned that the local by-law did not permit an owner of a preexisting, nonconforming parcel to change its use from one mode such as a gravel pit to another such as a landfill.
In the present case, the Ordinance of the City of Lawrence is far less obtuse in its expression of municipal policy than was the Winchendon by-law discussed in the Blasco case. The City of Lawrence has declared that used car lots are prohibited in Residential and Commercial districts, and permitted only as accessory uses to new car sales operations in Industrial districts. The Ordinance, §29-9(c). This is the result of changes made in the Ordinance in 1995 prior to when the defendant Melvin sought a special permit.
In Blasco, the Appeals Court, consistent with the holding in the Snow Inn Corporation case, went on to explain that merely because G.L.c. 40A, §6, creates a mechanism for the issuance of a special permit to approve a change in the use of a preexisting, nonconforming use, municipalities are nonetheless authorized to regulate and prohibit changes in nonconforming uses. Blasco, 31 Mass.App.Ct. at 36-37 (noting that to interpret G.L.c. 40A, §6 otherwise would render nugatory the statutory language that a zoning ordinance “shall apply to any change or substantial extension of’ a preexisting, nonconforming use). This interpretation of G.L.c. 40A, §6 is consistent, the Biasco court noted, with public policy. “(W)hatever harshness might result from a particular town by-law’s strict regulation of changes in nonconforming uses is justified by policy considerations which generally favor their eventual elimination ... If the law were such that any property owner had the right to change a nonconforming use to any other use so long as the new use was not substantially more detrimental to the neighborhood, nonconforming uses would tend to exist in perpetuity, and any comprehensive municipal plan for regulating uses in particular districts would never fully take effect.” Id. at 39 (citations omitted).[5]
The thrust of the defendant’s argument is that the section of the Ordinance relating to nonconforming uses is a general exception that authorizes the granting of a special permit so long as the use is permitted anywhere in the city. Therefore, the Board argues, §29-13(f) gives it the authority to issue a special permit for a used car lot. Under §29-13(f) of the Revised Zoning Ordinance of Lawrence “(a]ny pre-existing nonconforming use . . . may be changed, extended or altered by a special permit from the board of appeals upon a finding by the board of appeals that such change ... is not substantially more detrimental than the existing nonconforming use ... to the neighborhood.” However, as noted above, the City of Lawrence has indicated in amendments to the zoning law that were adopted after the enactment of §29-13(1) that it is municipal policy not to permit any more used car lots in residential or commercial districts. Additional evidence of this municipal policy is Article VII of the Revised Zoning Ordinance of the City of Lawrence which in §29-23 lists a variety of specific uses that are permitted either by right or by special permit. Used car lots are not mentioned other than as an accessory use to new vehicle sales. See The Ordinance §29-23(ee). Thus a consideration of the plain meaning of §29-9(c) and §29-23(ee) of the Ordinance of the City of Lawrence evidences a specific and unmistakable municipal policy to ban any additional used car lots in the city except as accessory uses to facilities engaged in new car sales.[6]
ORDER
It is the policy of the Massachusetts Zoning Enabling Act, G.L.c. 40A, to allow for the maximum scope for local self-determination. The City of Lawrence thus has broad authority to make legislative determina *38 tions about what uses are or are not permitted in the various zoning districts within the city. In this case, the evidence is that in 1995, the City of Lawrence amended its zoning law to prohibit used car lots in Residential and Commercial districts except as an accessory use to uses authorized for new car sales. Exhibit 1, The Ordinance, §29-9(d); §29-11, and §29-29(ee). Under state law, the defendant Melvin has a right to the continued use of a lawful preexisting, nonconforming use. G.L.c. 40A, §6. However, that statute does not empower the local permit granting authority to approve a change, extension, or alteration of a nonconforming use whenever there is a finding that such a change will not “be substantially more detrimental than the existing nonconforming use to the neighborhood" unless the change also complies with the current terms of the local ordinance or bylaw. G.L.c. 40A, §6.
For the above reasons, I conclude that the Zoning Board of Appeals of the City of Lawrence exceeded its authority in this case by granting a special permit for a used car lot, even though it imposed a number of conditions that arguably will result in substantial improvements in the appearance of the garage and the lot on which it is situated, and even though the proposed use may not be more detrimental to the neighborhood. The Zoning Board of Appeals does not sit as the legislative body of the City of Lawrence. It is not permissible for the Zoning Board of Appeals (and certainly not for this court) to make judgments about the wisdom of applying the duly enacted zoning laws of the City of Lawrence. Therefore, in accordance with G.L.c. 40A, §17,1 order that the decision of the Zoning Board of Appeals of the City of Lawrence granting the defendant Melvin a special permit is hereby annulled.

 “Nonconforming Uses, Buildings, and Structures” are defined and regulated in Article IV, Section 29-13 of the Ordinance.

 Although the Board makes reference to a preexisting use as a used car lot, it is clear that the Board acted to approve a change in a preexisting, nonconforming use from an auto repair facility to a used car lot under what it believed was the authority conferred on it to issue a special permit under §29- 13(f) of the Ordinance (changes in preexisting, nonconforming use) and G.L.c. 40A, §6. If the premises were ever used for used car sales, I assume that that preexisting use has been lost by abandonment. See G.L.c. 40A, §6.

 In addition, the Zoning Board recommended nine conditions which it imposed as part of its final order. See Plaintiffs Complaint, exhibit 1 at 1. These conditions include the following: no more than 10 “recent/late model autos in good condition” can be on the lot at any one time; no vehicle wrecks may be on the lot at any time; the buffers on the side and front are increased to four and five feet respectively with shrubs to be added; building improvements suggested by defendant Melvin must be made (see exhibit nineteen); the permit must be renewed after one year; external lighting facing away from the plaintiffs’ property must be installed; and the billboard contract for a sign on the garage must be phased out and the billboard removed.

 This view is also consistent with the general understanding of the purpose of a special permit. “[A] special permit concerns a use thought under the zoning code to be potentially acceptable in a zoning district, but only after and subject to review and permission of a permit granting authority, to the end that the use applied for be compatible with the allowed uses in the area in which it is to be planted. Special permits govern that class of uses that lie between those that are prohibited and those that, because (hey comply with the zoning code in all detail, are allowed as of right.” See Duteau v. Zoning Board of Appeals, 47 Mass.App.Ct. 664, 667-78 (1999) (citations omitted). A special permit authorized by G.L.c. 40A, §9 cannot be granted for a use that is not allowed in a particular zoning district. See SCIT, Inc. v. Planning Board of Braintree, 19 Mass.App.Ct. 101, 110 (1984).

 This court has an obligation to interpret a zoning ordinance in the same manner as it would interpret a statute. "Our function in interpreting any statute is to ascertain ‘the intent of the legislature, as evidence by the language used, and considering the purposes and remedies intended to be advanced.' ” Redgrave v. Boston Symphony Orchestra, Inc., 399 Mass. 93, 98 (1987), quoting Glasser v. Dir. Division of Employment Sec., 393 Mass. 574, 577 (1988). When “the statute is unambiguous [and] the language employed is neither peculiar nor technical, but is comprised rather of familiar words commonly combined to express, as they do here, a simple thought. . ., we construe the statute according to the common and approved use of this language." New England Med. Center Hosp., Inc. v. Commissioner of Rev., 381 Mass. 748, 750 (1980).