Bohn, J.
On January 30, 2001, the Town of Winchendon and the Building Inspector of the Town of Winchendon filed this action pursuant to G.L.c. 40A, §7 to enforce the Town of Winchendon Zoning Bylaw, the Massachusetts Building Code and the Massachusetts Architectural Access Board Regulations. Through their complaint, the plaintiffs seek to enjoin defendant Wachusett Valley Riders Club, Inc. from conducting motor vehicle racing contests on its property in the Town of Winchendon.
On April 24, 2001, the plaintiffs filed a motion for a preliminary injunction. Among other things, that motion requests an order from this court enjoining the defendants from conducting all motor vehicle racing activities on its premises; and from conducting any and all activity at the site “unless and until Wachusett complies with state and local laws and regulations, as set forth in the Building Inspector’s cease and desist order dated September 20, 2000.”
*218 Plaintiffs motion for preliminary relief was brought before this court for hearing on April 30, 2001.
Based on allegations contained in the complaint, on responses contained in defendant’s answer, on pleadings filed in support of and in opposition to plaintiffs’ motion for summary judgment, and on attachments to those pleadings, particularly the affidavit of Matthias J. Mulvey, the facts on which plaintiffs’ motion may be resolved consist of the following: On January 17, 1996, the Zoning Board of Appeals of the Town of Winchendon granted defendant a special permit to operate a private club on their property located at 783 Spring Street in Winchendon. That special permit was intended for the purpose of “social and recreational activities” for club members only. Social and recreational activities were defined in the special permit to include horse shows, bike shows, swap meets, cruise nights, youth and parent minicycle training seminars and ATV (all terrain vehicles) safety training.
The issuance of the special permit in January 1996 was predicated on defendants’ compliance with fifteen conditions, at least three of which the Town alleges in its complaint have been violated. First, Wachusett was to secure a building permit for any club house structure or any other type of structure requiring a permit (Condition Number Three). Second, all parking for club related activities was to be on the site only, and no parking was to be permitted on the public way (Condition Number Six). Third, Wachusett was to comply with all federal, state and local regulations (Condition Number Fourteen). No further review was sought by the defendant with respect to the imposition of any condition.
Beginning in September 1999 and continuing through October 2000, defendant Wachusett has been conducting motor vehicle racing on its property, including motorcycle races, Go-Kart races and races involving four wheel off-road vehicles. On June 26, 2000, following confirmation that defendant was sponsoring motor vehicle racing, the former interim Building Commissioner of the Town of Winchendon issued a cease and desist order to the defendant requiring an end to motor vehicle racing on the properly. In that order, the commissioner advised the defendant that “Racing of vehicles including, but not limited to motor cycles, Go-Karts and four wheel off road vehicles, is prohibited in the R1 district (Winchendon Bylaw article 3) and is not included in your special permit which was issued by the Winchendon ZBA and recorded by the Winchendon Town Clerk on February 14, 1996.” The defendant did not appeal from the June 26 order.
In violation of the June 26, 2000 cease and desist order of the interim Building Commissioner, the defendant continued to sponsor and conduct motor vehicle racing on the property on Spring Street in the Town of Winchendon.
On September 20, 2000, the Special Building Inspector of the Town of Winchendon issued a second order to the defendant requiring that it cease and desist from all use of the property at 783 Spring Street unless and until Building Code and Access violations are corrected. With respect to racing activities, the Inspector advised the defendant that the .use of the property for motorcycle racing is a violation of the Winchendon Zoning Bylaw, Article 3, Section 3.21(j) and (k) in that motorcycle racing is not a permitted use. With respect to activities other than racing, the Inspector determined
—that defendant had removed a significant amount of earth without having obtained a removal permit from the Board of Appeals or from the Board of Selectmen as required by Zoning Bylaw 5.3 and in violation of Condition 14 of the Special Permit.
—that defendant had established parking areas that exceed in number and location the allocation of such in the Special Permit and in Zoning Bylaws 5.54, 5.55 and 5.551-5.556.
—that defendant had placed structures and established parking spaces on wetlands and altered generally the contours of the site which touch on the wetlands without a special permit for that purpose issued by the Zoning Board of Appeals and in violation of Condition 14.
—that defendant had violated provisions of the Architectural Access Board by constructing unpaved and improperly bound walkways and parking areas.
—that defendant had constructed numerous buildings and installations without the required building permit, including the race track itself, tents, lighting poles, a registration booth, toilet facilities, bleachers, stairs and an office trailer.
—that defendant had violated the State Building Code by constructing public viewing areas that are not protected from activity on the race track, do not have the means of safe egress required by 780 CMR 1006.3, 1006.5, 1007.1, 1010.1 and 1012.1 and therefore, by implication, are unsafe.
The defendant did not appeal from the September 20 order.
In violation of the June 26, 2000 cease and desist order issued by the interim Building Commissioner, and in violation of the September 20, 2000 cease and desist order issued by the Special Building Inspector, defendant continues to advertise for and conduct motorized racing events on its premises. The next series of events is reportedly scheduled for the weekend of May 5-6, 2001.
In order to obtain a preliminary injunction, a moving party must show that, without the requested relief, it may suffer a loss of rights that cannot be vindicated Should it prevail after a full hearing on the merits. Planned Parenthood Leagues of Massachusetts, Inc. v. *219 Operation Rescue, 406 Mass. 701, 710 (1990). “What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chances of success on the merits." Packaging Indus. Group v. Cheney, 380 Mass. 609, 617 (1980). In evaluating the motion for preliminary relief, the Court must “balance the risk of irreparable harm to the plaintiff and defendant in light of [each] party’s chance of success on the merits at trial.” Planned Parenthood, 406 Mass. at 710, quoting Packaging Indus. Group, 390 Mass. at 617. “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." Id., quoting Packaging Indus. Group, 380 Mass. at 617.
In cases in which the plaintiff is a public entity seeking to enforce a regulation, the plaintiff must show that granting of injunctive relief is consistent with public interest. “When the government acts to enforce a statute or make effective a declared policy of [the Legislature], the standard of public interest and not the requirements of private litigation measures the propriety and need for injunctive relief.” Commonwealth of Massachusetts v. CRINC, et al, 392 Mass. 79 (1984). The standard of requiring a demonstration of immediate irreparable harm is, therefore, not a prerequisite to the allowance of an injunction in a case in which the plaintiff is a public entity. In such a case, before issuing a preliminary injunction, a judge is required to determine that the requested order promotes the public interest or, alternatively, the equitable relief will not adversely affect the public. Id. at 89.
In the present case, the Town seeks to enforce certain state and town regulations designed to protect the health and safety of the public, the use of land in the Town and the general ambiance of the community. To accomplish that task, the Building Inspectors representing the Town have, on two different occasions, served the defendant with orders to cease and desist from conducting motor vehicle races at its Spring Street property — an activity proscribed by the Town’s Bylaws.[1] The defendant has ignored both orders and has continued to operate its unauthorized business in violation of the orders. That activity must cease.
In its defense, Wachusett-argues that the special permit issued by the Town on January 17, 1996 authorized the activity at issue here. Specifically, Wachusett argues that, by giving the defendant a special permit to establish a private club for social and recreational activities, it impliedly permitted the activity here which, defendant claims, is recreational in nature. In support' for that position, the defendant has attached to its opposition the affidavits of four members of the Zoning Board of Appeals, each of whom voted to allow the Special Permit on January 17, 1996 and all four of whom attest to their understanding that racing would be permitted as one of the various activities in which members of the Rider’s Club would participate as a social or recreational activity. Those affidavits, however, do not advance the defendant’s case. First, even if the affiants are correct and the special permit was intended to authorize motor vehicle racing as a recreational activity, that permit was issued with several conditi.ons. Those conditions were designed to protect the safety of citizens and the integrity of the environment. Those conditions have not been met, regardless of the use intended by the permit.
Second, in other instances in which the Board of Selectmen have authorized racing in the Town, they have done so through explicit language contained in the Special Permit. Such use was not made explicit in the permit at issue here.
Third, and in any event, neither the Board of Appeals nor the Building Inspector can permit an activity otherwise prohibited by the State Building Code and the Architectural Access Board regulations. See e.g. Blasco v. Board of Appeals of Winchendon, 31 Mass.App.Ct. 32 (1991). See also Webster v. Z&K Enterprises, Inc., 1 Mass.App.Ct. 800, 845 (1973).
It is the opinion of this Court, based on the pleadings and argument of counsel, that a preliminary injunction should enter restraining the defendant from conducting motor vehicle racing, including motorcycle racing, Go-Kart racing and racing of off-road vehicles at its site on Spring Street, Winchendon. In the opinion of this Court, there is a strong likelihood that the plaintiff Town will prevail on the merits of its case against the defendant. Furthermore, it is abundantly clear that the public interest requires entry of this preliminary injunction with respect to the activity of racing. At the hearing before this Court on April 30, 2001, plaintiffs counsel described the conditions which are the subject of the Town’s cease and desist orders, several of which pose a clear danger to participants and to those persons witnessing motorcycle and off-road vehicle races.
In argument before this Court on April 30, counsel for defendant suggested that the Town acted unfairly when it ordered the defendant to cease operation of its business some five years after it had given the defendant a special permit. In response, the Town’s counsel argued that changes in the use of the premises were altered between the time the special permit was issued and the time the violations were discovered.
The Court tends to agree that the timing of the Town’s motion in this case, filed some eight months after the Special Building Inspector’s cease and desist order of September 20, 2000, and some ten days before the racing season is to begin was unfortunate and has caused hardship to the defendant as well as to the patrons who wish to experience defendant’s racing events. For that reason, the Court is willing to delay the entry of any order in this case to a date which enables the defendant to conduct its program scheduled for the weekend of May 5-6, 2001. The issue here, *220 however, does not turn on the timing of the motion. The issue here is the enforcement of regulations designed to insure the safety of persons who avail themselves of the entertainment provided in certain public spaces, and the ability of agencies such as the Winchendon Board of Appeals and the Building Inspector to enforce those laws. Pending resolution of this case on its merits, the defendant will be allowed to conduct those activities described explicitly in the special permit, i.e. horse shows, bike shows, swap meets, cruise nights, youth and parent minicycle training seminars, ATV safety training and the like. Until this case is resolved, however, and except for the events scheduled on May 5 and 6 of this year, it will be enjoined from conducting any motor vehicle racing events.

ORDER

For the reasons set forth above, and until further order of this Court, the defendant is hereby enjoined from advertising, sponsoring or conducting any and all motorized racing events on its property at 783 Spring Street in the Town of Winchendon, Massachusetts, including racing of motorcycles, Go-Karts and off-road vehicles. Execution of this Order is stayed until May 7, 2001.

 Similarly, in the case of Boucher v. Norcross, Worcester Civ. Action No. 93-0446, this Court (Donohue, J.) has held that Section 3.21(k) of the Winchendon Zoning Bylaws did not allow the issuance of a special permit for construction of a dragstrip or motorsports facility in an RI zoning district in the Town of Winchendon.