ANNA M. MURRAY & others[1] vs. BOARD OF APPEALS OF
BARNSTABLE & others.[2]

Barnstable. November 18, 1985. — July 7, 1986.

Present: DREBEN, KAPLAN, & SMITH, JJ.

*Zoning,* Nonconforming use or structure, Special permit, By-law. *Practice,*
*Civil,* Zoning appeal, Standing.

A judge was not clearly wrong in finding that certain property owners,
who, as "parties in interest," had received notice of proceedings by a
town's zoning board of appeals respecting a certain application for a
special permit, were persons aggrieved by the board's granting of the
permit and thus were entitled to obtain judicial review of the board's
decision. [475-476]

Provisions in the zoning by-law of a town prescribing requirements, gener-
ally classified as intensity regulations, for apartment buildings that "may
hereafter be built or established in an existing building when authorized"
were inapplicable to action by the town's zoning board of appeals in
granting a special permit for the conversion of premises in a residential
zone from their present preexisting nonconforming use as an inn to use
as apartments. [476-481]

CIVIL ACTION commenced in the Superior Court Department
on July 24, 1984.

The case was heard by *Augustus F. Wagner, Jr.,* J.

*Joan A. Lukey* for the plaintiffs.

*Edward W. Kirk* for Forrest A. Daniels & another.

*Robert D. Smith,* Town Counsel, & *Barbara Harris,* Assist-
ant Town Counsel, for the Board of Appeals of Barnstable,
submitted a brief.

SMITH, J. The plaintiffs appeal from a judgment entered in
the Superior Court upholding the granting of a special permit
by the Barnstable board of appeals to Forrest A. Daniels and
Madeline Daniels. The special permit was granted for the con-

---

[1] Other plaintiffs are fourteen persons who claim to be persons aggrieved
within the meaning of G. L. c. 40A, § 17.

[2] Forrest A. Daniels and Madeline Daniels.

version of property located in Barnstable from its present use as an inn to use as apartments. The Danielses contend on cross appeal that the judge was incorrect in ruling that the plaintiffs had standing to appeal from the board's decision.

The Danielses own and operate the Cotuit Inn. The zoning by-law of Barnstable does not permit the operation of an inn in the area where the premises are located.[3] However, the use of the property as an inn predates the adoption of a zoning by-law in Barnstable. Therefore, it is undisputed that the use of the premises as an inn is a valid preexisting nonconforming use. The inn property consists of five buildings which contain an office, cocktail lounge, dining room, cottages, single rooms and housekeeping suites. The Danielses applied to the board for a special permit to change the valid nonconforming use of their property to apartment use.[4] In their application, the

---

[3] The inn is located in an area which is designated as an "RF" zone under the Barnstable zoning by-law. The only permitted uses in that zone are detached, single-family residences, professional home occupation, and rented rooms in buildings occupied by fewer than six lodgers where a member of the owner's family lives on the premises.

[4] Two different sections of the zoning by-law refer specifically to special permits for a change in a nonconforming use.

Section G(B) provides:

"B. Any change of a non-conforming use, any alteration, relocation or increase in size of an existing non-conforming building or structure to extend the non-conforming use on the same lot, or use of existing or construction of a new building or structure, shall be allowed only by Special Permit of the Board of Appeals. Any of the foregoing shall not result in the creation of any use or structure more objectionable or substantially detrimental to the neighborhood or the creation of two or more non-conforming uses differing in use."

Section P is the general section of the by-law governing special permits, and provides in pertinent part:

"A. The Board of Appeals may grant a special permit for the following exceptions to the zoning by-law:

".    .    .    .

"6. Change of a non-conforming use to any specified use not more detrimental to a neighborhood."

Danielses stated that they planned to eliminate the inn, restaurant, and bar uses on the property and create ten apartments.

The board held a public hearing and reviewed the Danielses' application. After the board voted unanimously to grant the requested application, the plaintiffs brought this action in the Superior Court. Their complaint, which sought to annul the grant of the permit, contended that the board's decision suffered from substantive and procedural defects. In their answer, the Danielses alleged, among other things, that the plaintiffs lacked the required standing to appeal from the board's decision. In addition, the Danielses filed a motion requesting a remand to the board in order that it might make findings required by the zoning by-law and G. L. c. 40A, § 6.[5] A Superior Court judge allowed the motion.

After the matter was remanded, the board conducted another public hearing on the petition and voted a second time to grant the special permit to the Danielses. In its decision, the board made a specific finding that "the proposed use will not only not be substantially more detrimental or objectionable to the neighborhood than the present use, but will, in fact, bring about an improvement and substantial upgrading and will be more in keeping with the district's essentially residential character, and is therefore in keeping with the spirit and intent of the zoning by-law." A Superior Court judge, after a trial, upheld the board's action.

1. *Standing issue.* The Danielses contend that the judge erred when he ruled that the plaintiffs were aggrieved persons within the meaning of G. L. c. 40A, § 17, as appearing in St. 1982, c. 533, § 1.[6] Under that statute, "[a]ny person aggrieved

---

[5] The board had neglected to make a finding, as required by the zoning by-law and G. L. c. 40A, § 6, that the change in the nonconforming use was not substantially more detrimental to the neighborhood than the existing nonconforming use.

[6] The Danielses filed a motion for summary judgment contending that there was no genuine issue of material fact that ten of the fifteen plaintiffs were not aggrieved persons. An assessors' map, real estate listings, and

by a decision of the board of appeals . . . whether or not previously a party . . . may appeal to the superior court." A judge's finding that a person is aggrieved is not to be set aside unless it is clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *Paulding* v. *Bruins,* 18 Mass. App. Ct. 707, 709 (1984). Here, there was evidence that some of the plaintiffs were abutters to abutters and as "parties in interest" had received notice of the public hearings. See G. L. c. 40A, § 11. There is a rebuttable presumption that such persons are aggrieved persons under G. L. c. 40A, § 6. *Marotta* v. *Board of Appeals of Revere,* 336 Mass. 199, 204 (1957). *Paulding* v. *Bruins, supra* at 709. The record does not demonstrate that the Danielses presented evidence sufficient to overcome that presumption. In addition, such abutters, owners of property located in the same zoning district — a single-family, one-acre district — had a legitimate interest in preserving the integrity of the district from the intrusion of multi-family housing. Certainly, the interest of at least these plaintiffs was more than a general civic interest in the enforcement of the zoning ordinance. Compare *Amherst Growth Study Comm., Inc.* v. *Board of Appeals of Amherst,* 1 Mass. App. Ct. 826, 827 (1973). There was no error.[7]

2. *Application of § M.* The zoning by-law contains special regulations in § M governing apartments. That section provides that "[a]partment dwelling structures may hereafter be built or established in an existing building when authorized only in accordance with the following requirements." Various requirements, generally classified as intensity regulations, are then

---

other materials accompanied the motion. The plaintiffs responded with affidavits. The judge reserved his decision on the motion. At the trial, the Danielses contended that those plaintiffs not mentioned in the summary judgment motion were also not aggrieved persons.

[7] It is not necessary for the judge to determine that *all* of the plaintiffs had standing. The fact that only *one* of the plaintiffs was an aggrieved person is sufficient to permit an appeal from the board's decision. See *Save the Bay, Inc.* v. *Department of Pub. Util.,* 366 Mass. 667, 674-675 (1975); *Rafferty* v. *Sancta Maria Hosp.,* 5 Mass. App. Ct. 624, 630 (1977).

set forth in that section.[8] The plaintiffs argue that § M is applicable to the conversion of the inn to apartment use because the apartments are "established in an existing building."[9] The

---

[8] The full text of § M is as follows:

"M. SPECIAL REGULATIONS — APARTMENTS

1. Apartment dwelling structures may hereafter be built or established in an existing building when authorized only in accordance with the following requirements:

A. The gross land area of the lot or group of contiguous lots on which an apartment structure is permitted shall be not less than the product of five thousand (5,000) square feet per apartment dwelling unit times the number of such units in the apartment structure proposed or the conversion of an existing building into multi-family use.

B. Apartment buildings shall not cover more than twenty percent (20%) of the gross land area of the lot or combination of lots.

C. No apartment structure shall be higher than three (3) stories and the height shall be limited to thirty-five (35) feet from ground level to the top of the plate.

D. No apartments shall be erected nearer to any street line than three (3) times the distance from the ground grade to the top of the plate, or minimum of fifty (50) feet. Rear and side setbacks shall be not less than the distance from the ground grade to the top of the plate.

E. An unbroken yard space not less than twenty (20) feet in depth shall be established all along the entire perimeter of the lot or group of lots on which the apartment structure is located. Such yard space shall be planted and maintained as green area. In such yard space, there shall be no off-street parking nor driveway(s) except a driveway crossing that part of such yard space as is bordered by a street.

F. Off-street automobile parking spaces shall be provided on the lot or group of lots containing an apartment structure and each such space shall be easily accessible from a driveway on the property. There shall be not less than one and a half (1½) parking spaces per apartment dwelling unit on the property. Each such space shall be not less than two hundred (200) square feet in area, exclusive of the driveway(s). Each parking space shall be located not less than thirty (30) feet from the base of the building.

G. No living units will be allowed to be constructed or used below ground level."

[9] The plaintiffs also contend that G. L. c. 40A, § 6, does not prohibit a city or town from imposing, through its zoning ordinance or by-law, addi-

Danielses contended that it was evident from the reading of the entire by-law that the town did not intend to add the requirements of § M to those general requirements governing a change in a lawful nonconforming use.[10] The trial judge ruled that § M was not applicable. We agree with the trial judge.

A zoning by-law must be read in its complete context and be given a sensible meaning within that context. *Selectmen of Hatfield* v. *Garvey,* 362 Mass. 821, 826 (1973). The intent of the by-law is to be ascertained from all its terms and parts as well as the subject matter to which it relates. *Tilton* v. *Haverhill,* 311 Mass. 572, 577-578 (1942). It is settled that where the language of an enactment is clear and unambiguous it should be followed even if an injustice or hardship results. *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxn.,* 363 Mass. 685, 690 (1973). However, where a statute (or by-law) is faulty, lacks precision or is ambiguous, a court may utilize general rules of construction, presumptions and interpretational aids to glean its meaning. See, for example, the nonexclusive list of construction aids in *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxn., supra* at 690 n.8. See also *School Comm. of Greenfield* v. *Greenfield Educ. Assn.,* 385 Mass. 70, 79-80 (1982). Here, the zoning by-law is not free from ambiguity with regard to the question whether § M applies to a change in a nonconforming use. Therefore, we utilize the full panoply of interpretational aids that are available.

At the outset, we note that § G (B) of the by-law (see note 4, *supra*) is "permissive in spirit" in that it sanctions, by special permit, changes in nonconforming uses. See *McAleer* v. *Board of Appeals of Barnstable,* 361 Mass. 317, 323-324 (1972); *Berliner* v. *Feldman,* 363 Mass. 767, 777 (1973); *Sullivan* v. *Board of Appeals of Harwich,* 15 Mass. App. Ct. 286, 289-290

---

tional restrictions beyond the requirement that the appropriate authority make a finding that the new use is not substantially more detrimental to the neighborhood than the nonconforming use. Because we hold that § M is not applicable, we need not discuss this contention.

[10] The board did not make any reference to § M when it granted the special permit to the Danielses.

(1983). If the town had intended that § M alter or limit the permissive nature of § G, it could have done so by cross referencing the sections (and § P[A] [6], see note 4, *supra*) to one another. Indeed, there are other sections of the by-laws wherein the drafters *did* cross reference to § M.[11] The absence of an explicit reference to § M is a strong indication that the drafters intended an exclusion. See *First Nat'l. Bank* v. *Judge Baker Guidance Center,* 13 Mass. App. Ct. 144, 153 (1982). Moreover, it has also been stated, in the context of statutory interpretation, that if an omission from a statute was intended (e.g., a specific cross reference), no court can supply it; if the omission was due to inadvertence, an attempt to supply it would be tantamount to adding to a statute a meaning not intended by the Legislature. *Mitchell* v. *Mitchell,* 312 Mass. 154, 161 (1942). *Boylston Water Dist.* v. *Tahanto Regional Sch. Dist.,* 353 Mass. 81, 84 (1967). *Cranberry Realty & Mortgage Co.* v. *Ackerley Communications, Inc.,* 17 Mass. App. Ct. 255, 257 (1983).

Although § M is clearly entitled "Special Regulations — Apartments," the board of appeals did not refer to it in the minutes of its hearings or in its decision. A local board, of course, has an "intimate understanding" not only of conditions within a town but also "of the background and purposes of the entire [zoning] by-law." *Fitzsimonds* v. *Board of Appeals of Chatham,* 21 Mass. App. Ct. 53, 57 (1985). It is reasonable to assume that the board did not consider § M because it felt that it was inapplicable to an application for a special permit

---

[11] See § K of the zoning by-law where it states:

"K. USE REGULATIONS — NON RESIDENCE DISTRICTS

"A. No building shall be erected or altered, and no building or premises shall be used, for any purpose in the following specified districts other than provided in this section . . . .

"1. Business District

"  . . . .

"g. Apartment houses, subject to Section M.
"13. Professional Residential District

"  . . . .

"b. Apartments, subject to provisions of Section M."

for a change of a nonconforming use.[12] As the Supreme Judicial Court recently stated in *Simon* v. *State Examrs. of Electricians,* 395 Mass. 238 (1985),

> "Authority actually granted by [the Legislature] of course cannot evaporate through lack of administrative exercise. But just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred."

*Id.* at 246, quoting from *FTC* v. *Bunte Bros,* 312 U.S. 349, 352 (1941). See also 2A Sands, Sutherland Statutory Construction § 49.05, at 364 (4th ed. 1984).

We note that § M will not be rendered nugatory should it be found inapplicable to a change in a nonconforming use, and may, in fact, be construed consistently and harmoniously with the remainder of the by-law. Section M provides that "[a]partment dwelling structures may hereafter be built or established in an existing building when *authorized* only in accordance with the following requirements:

> "A. The gross land area of the lot or group of contiguous lots on which an apartment structure is *permitted* shall not be less . . ." (emphasis supplied).

The above language can be construed to mean that the requirements of § M shall apply only where apartments are "authorized" or "permitted" by the by-law. Apartments are presently allowed in Barnstable as of right in three zoning districts and by special permit in two additional districts. In addition,

---

[12] This "assumption" is bolstered somewhat by the fact that, after the allowance of the Danielses' motion for immediate remand, the board, at a regularly scheduled meeting, discussed the amended decision without reference to § M despite the fact that the allegations of the plaintiffs' complaint made specific reference to § M.

the amendment of the by-law (in 1982) to include the words "or established in an existing building" does not necessarily require a conclusion, as the plaintiffs argue, that § M must apply to a change in a nonconforming use but could simply be viewed as a recognition by the town that large buildings located in a district where apartments are permitted are frequently renovated to contain apartment units.

Lastly, it is not lightly to be supposed that major changes in a statute or by-law were intended where not "plainly expressed." *Ferullo's Case,* 331 Mass. 635, 637 (1954). In the instant matter, § M did not apply to changes in a nonconforming use prior to 1982, as it referred only to apartment dwelling structures "hereafter . . . built" (see 1980 by-law). The plaintiffs' argument that § M now applies to changes in a nonconforming use can certainly be classified as a major or substantial change in the by-law.

For the above reasons, we hold that there was no error in the judge's ruling that § M does not apply.

*Judgment affirmed.*