828    43 Mass. App. Ct. 828 (1997)

Berkshire Power Development, Inc. *v.* Zoning Board of Appeals of Agawam.

BERKSHIRE POWER DEVELOPMENT, INC. *vs.* ZONING BOARD OF APPEALS OF AGAWAM; ANTONIA CUCCOVIA & others,[1] interveners.

No. 97-P-1071.

Hampden. October 17, 1997. - November 19, 1997.

Present: ARMSTRONG, GILLERMAN, & JACOBS, JJ.

*Zoning,* Board of appeals: decision; Special permit; Height restriction. *Electricity.*

Where a property owner sought a special permit to erect certain structures taller than allowed by the zoning code in an industrial district, and where the three-member zoning board of appeals applied the appropriate standard but did not vote unanimously to grant the application as required by G. L. c. 40A, § 9, a judge of the Superior Court, considering an appeal pursuant to G. L. c. 40A, § 17, of the board's action, was without authority to enter a judgment granting the special permit. [832-835]

CIVIL ACTION commenced in the Superior Court Department on January 9, 1996.

The case was heard by *William H. Welch*, J., on a motion for summary judgment, and a motion for reconsideration or, in the alternative, a motion to intervene was heard by *Bertha D. Josephson*, J.

*Paul L. Feldman (J. Gavin Cockfield* with him) for the interveners.

*Alan K. Posner (John A. DeTore* with him) for the plaintiff.

GILLERMAN, J. The plaintiff (Berkshire) seeks to construct and operate a 252 megawatt, gas-fired electric power generating plant on approximately forty acres of land located in Agawam in a zoning district permitting industrial use. Berkshire applied to the zoning board of appeals of Agawam (the board) for a

[1]Maria Cuccovia, Joseph S. Schlaffer, Katherine M. Schlaffer, John J. McCarthy, Manon M. McCarthy, Susan Fay, Leon J. Duquette, and Bonnie Duquette.

special permit to erect certain structures taller than forty feet.[2] After a public hearing, the board voted two in favor, one opposed, and the special permit was denied. See G. L. c. 40A, § 9 (action by a board of three members requires a unanimous vote). Berkshire appealed to the Superior Court, see G. L. c. 40A, § 17, and thereafter filed a motion for summary judgment. The judge allowed Berkshire's motion and entered a final judgment granting Berkshire's application to build the electric generating facility upon the favorable vote of two members of the board. This appeal followed.

We recapitulate the history of this controversy in some detail.

1. *Proceedings before the board.* Berkshire's application to the board was filed July 20, 1995; it stated that it was an "[a]pplication to [the] Board of Appeals for special Permit as provided in the zoning and other By-laws."[3] Below the printed portion of the form appears the following: "Please see the attached special permit application for permission to erect certain buildings and necessary, appurtenant structures and equipment in excess of 40 feet."

The cover letter from Berkshire's counsel to the chairman of the board of appeals states that the application is "[p]ursuant to Section 180-63 of the Agawam Zoning Code . . . for a special permit in connection with certain buildings . . . that will be in excess of 40 feet in height. . . ."

Berkshire submitted a memorandum of law to the board to "address the standard of review" to be applied by the board regarding a special permit application for "exception to height limitations." In brief, Berkshire urged the board to follow the standard of review for special permits set forth in § 180-11(G) of the Agawam zoning code. Subparagraph (G) provides that the board shall not approve a special permit application unless it finds that the following five conditions are met: the site is an appropriate location for the intended use; the use will not adversely affect the health, safety, or property values of the

---

[2] Section 180-63 of the Agawam zoning code provides as follows: "Industrial buildings shall not exceed two (2) stories, forty (40) feet in height, *except with approval of the Board of Appeals after a public hearing.* These provisions shall not apply to required equipment appurtenant to industrial buildings, except that smokestacks, water tanks, grain elevators and the like are not permissible except after approval of the Board of Appeals after a public hearing." (Emphasis added.)

[3] The quoted sentence appears in the printed form, except that the word "special" was interlineated in handwriting.

neighborhood; there will be no nuisance or safety hazard created; there will be adequate safety controls for the intended use or service; the use will not be against the public interest or detrimental to the character of the neighborhood.

Berkshire's memorandum pointed out that while § 180-11 is entitled "Special use permit exceptions and special permits," the standards of that section (which appear in subparagraph [G]) "apply to more than just 'uses'. . . ." Thus, states the memorandum, "a request for a height exception must be reviewed in the context of the special permit process set forth in Section 180-11."

A majority of the board (two members) voted to grant the application and issued their opinion on January 5, 1996. The decision recites public hearings on four days, and public meetings on three additional days, all in connection with the Berkshire application to permit the construction of certain buildings and appurtenant structures in excess of forty feet. The majority found numerous facts, referred to its extensive review and investigation of the application, and adopted the argument of Berkshire that the provisions of § 180-11(G) provide the applicable standard of review. The majority found that all five conditions were satisfied. The favorable vote of the majority was subject to the performance of forty-seven conditions.

The minority member voted to deny the application. He noted that "[b]oth opponents and proponents of this appeal agreed that the Standards of Review to apply to the approval or denial of the Special Permit regarding this appeal would be those criteria of Section 180-11(G) of the Zoning Ordinance. . . ." The minority member concluded that the five conditions of § 180-11(G) were not satisfied.

As a result of the negative vote of the dissenting member, the application for a special permit was denied, as noted above.

2. *Proceedings in the Superior Court.* Berkshire then filed a timely complaint in the Superior Court, see G. L. c. 40A, § 17; the complaint alleged that under § 180-63 the approval of the board was required after a public hearing, that there was a public hearing, that a majority of the board approved the application, and that the decision of the board to treat the vote as a denial was an error of law. Gone were the arguments it made to the board — that a special permit was required, and that the standards of § 180-11(G) must be satisfied.

Certain abutters who had objected to Berkshire's application

filed a motion to intervene in the Superior Court proceedings. The motion was denied on the ground that, Berkshire's application for a special permit having been denied, the abutters were not aggrieved. See *Prudential Ins. Co.* v. *Board of Appeals of Westwood*, 18 Mass. App. Ct. 632, 635 (1984) (no aggrievement under Mass.R.Civ.P. 24[a][2], 365 Mass. 770 [1974] where board's decision benefited the proposed interveners).

Berkshire then filed its motion for summary judgment, arguing that the "authorization requested is not a special permit governed by G. L. c. 40A, § 9," and that having obtained a simple majority vote, Berkshire is entitled to judgment as matter of law.

The judge agreed; he reasoned that the proposed use was as of right under the zoning code and therefore cannot be made the subject of a special permit. Since the forty-foot limitation was merely a "reasonable term or condition," a simple majority vote was all that was required. The judge entered final judgment for Berkshire on June 13, 1996, purporting to affirm the board's "approval" of Berkshire's application to build the power plant. The board then entered into a settlement agreement with Berkshire, and the decision was made by the board not to appeal the decision of the Superior Court.

The abutters now reappeared. They filed an emergency motion for reconsideration, or in the alternative, a motion to intervene. The judge who heard the original motion to intervene heard this emergency motion. See Rule 9D of the Superior Court, effective January 31, 1990. The judge allowed the emergency motion to intervene. She reasoned that motions to intervene *after* judgment, while seldom granted, may be allowed "if the proposed intervener demonstrates a strong justification." *Cruz Mgmt. Co.* v. *Thomas*, 417 Mass. 782, 785 (1994). The judge found that justification in the newly developed "inadequate representation" of the interests of the abutters,[4] and the "pivotal bearing" of the board's rules and regulations which the abutters proposed to add to the record on appeal and which had not been offered in evidence at the board's hearing on the application for a special permit. Those regulations provide, in part, "The approval of any matter requiring a public hearing is dependent upon the *unanimous* consent of the three (3) members who are sitting on the case" (emphasis added). Berkshire's ap-

---

[4]The board, as we have said, settled with Berkshire and declined to file a notice of appeal from the judgment entered in the Superior Court.

plication to the single justice of this court to reverse the allowance of the motion to intervene was unavailing, and it filed a notice of appeal, later dismissed by stipulation. Meanwhile, upon motion duly allowed by the motion judge, the record on appeal was supplemented by, inter alia, the board's rules and regulations.[5] See *Cruz Mgmt. Co.* v. *Thomas, supra* at 784. Finally, an assented-to motion designed to obtain consideration of the supplementary material by the judge who had entered summary judgment for Berkshire was denied.[6]

3. *Discussion.* We disagree with the judge's order allowing summary judgment for several reasons.

First, we proceed from the premise that a "local board of appeals brings to the matter an intimate understanding of the immediate circumstances, of local conditions, and of the background and purposes of the entire by-law; and so . . . the board's administrative view is valuable and is wanted." *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. 53, 57 (1985). Thus it is that "[w]e give substantial deference to the construction placed on . . . an ordinance by the agency charged with its administration," i.e., the board of appeals. *Manning* v. *Boston Redev. Authy.*, 400 Mass. 444, 453 (1987).

In this case, as the abutters point out, Berkshire's brief in support of its application brought to the attention of the board, correctly, that "[p]revious . . . decisions [of the board] make clear that applications for approval to build something in excess of 40 feet in the Industrial A and B Districts are treated as special permit applications and are reviewed against the standards set forth in Section 180-11(G)."[7] Copies of the deci-

---

[5]The supplementary material also included the zoning code of Agawam prior to 1975, and the affidavit of Joseph J. Conte, Sr., the building inspector and zoning enforcement officer of Agawam from 1967 through 1989. This opinion does not rely upon any of the supplementary material filed in this case.

[6]The following endorsement appeared on the motion: "The Court decided the motion on the basis of the pleadings and evidence before him at the time, not on new matters introduced through pleadings before another Judge after intervention was [allowed] after final judgment was entered without vacating or revising the judgment."

[7]Indeed, in its written, "closing comments" Berkshire submitted to the board, Berkshire wrote, "It is apparent that everyone involved in this process has understood that certain buildings, structures and equipment proposed to be constructed by Berkshire Power require a special permit under Section 180-63 and 180-11 of the Agawam Zoning Code because they are in excess of 40

sions were appended to Berkshire's brief to the board.[8] As stated in *Manning* v. *Boston Redev. Authy.*, we must, and do give "substantial deference" to the board's established interpretation of its zoning code. 400 Mass. at 453. We do not find any persuasive argument to the contrary.

In addition, Berkshire's brief to the board pointed out, correctly, that the failure to apply the standard of § 180-11(G) to an application for a special permit "could result in reversal of the [board's] decision on appeal pursuant to G. L. c. 40A, § 17." See *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 637-638 (1970). See also *Manning* v. *Boston Redev. Authy.*, *supra* at 453.

To these forceful arguments we add (i) *Woods* v. *Newton*, 351 Mass. 98, 102-103 (1966) (holding, under § 4 of c. 40A — the predecessor to § 9 of c. 40A — that a zoning code which authorizes an appeal board to grant a special permit in order to allow a deviation from the code's height limitation was a proper exercise of the board's power under § 4, and the deviation could not have been allowed as a variance; (ii) that, as we pointed out in careful detail in *Emond* v. *Board of Appeals of Uxbridge*, 27 Mass. App. Ct. 630 (1989), a purpose of the 1975 Zoning Act, St. 1975, c. 808, was to eliminate the "exception" language in the 1954 act, thereby permitting the continuation of the use of the special permit mechanism in connection with dimensional variations, *id.* at 633-636; and (iii) because the board applied the provisions of § 180-11 including the standards set forth in subparagraph (G), and denied the application because of the failure of a unanimous vote, the judge's authority, if he disagreed with the board, would be limited to remanding the application to the board for further consideration in light of the judge's opinion. See *V.S.H. Realty, Inc.* v. *Zoning Bd. Of Appeals of Plymouth*, 30 Mass. App. Ct. 530, 535 (1991).

To all of this Berkshire argues that, by omitting any reference to a special permit in § 180-63, Agawam elected not to *require* a special permit for permitted deviations from that section (thus

___

feet." These "comments" were included in the papers submitted to the judge who decided the summary judgment motion. See note 8, *infra*.

[8]The board filed a memorandum of law in opposition to Berkshire's motion for summary judgment. Attached to the memorandum were various exhibits, including the prior decisions of the board to which the memorandum referred. Thus those decisions were before the judge who decided the motion for summary judgment.

distinguishing, arguably, the *Woods* and *Emond* cases, *supra).* This is so, Berkshire argues, because a municipality "may elect to allow approval of deviations from dimensional requirements by mechanisms not subject to [the unanimity requirement of] G. L. c. 40A, § 9."

We need not, in this case, consider the seemingly novel proposition put forward by Berkshire regarding unidentified "mechanisms" which would support its position in the Superior Court and in this court. That theory was available to Berkshire when it filed its application to the board. It chose instead to file an application for a special permit, and in support of that application filed a fourteen-page memorandum arguing, with considerable persuasiveness, that a special permit was the appropriate procedure and that the standards of § 180-11(G) were those which must be applied to save the intended relief from illegality. That position was maintained continuously until the release of the final decision of the members of the board; indeed, the minority member pointed out that both Berkshire and its opponents "agreed" that the standard of review by the board was that formulated in subparagraph (G) of § 180-11 regarding special permits.

It is clear enough to us that the theory advanced by Berkshire to the Superior Court judge was not the result of a fresh insight into the law of land use in Massachusetts which would warrant careful consideration, but rather the product of a quite different stimulation provided by the dissenting member of the board. Having carefully and deliberately led the board, and those who opposed its application, down the road toward a special permit, see note 7, *supra,* Berkshire may not now abandon an analysis that it induced the board and others to adopt, in favor of an opposing theory it hopes will produce a satisfactory result. Compare *Santa Maria* v. *Trotto,* 297 Mass. 442, 447 (1937) ("[t]he theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review"); *Gurry* v. *Board of Public Accountancy,* 394 Mass. 118, 126 (1985) ("[a] party is not entitled to raise arguments on appeal that he *could have raised, but did not raise,* before the administrative agency . . .").

In sum, we see no basis for disturbing the settled practice of the board, not precluded by G. L. c. 40A, § 9, regarding the availability of special permit proceedings in order to obtain

relief from height limitations,[9] and the accompanying require-
ment of the unanimous vote of the board, as required by § 9.
Therefore, we reverse the judgment and remand the case to the
Superior Court for the entry of a final judgment affirming the
decision of the board. See Mass.R.Civ.P. 56(c), 365 Mass. 824
(1974) (summary judgment may be rendered against the moving
party).

*So ordered.*

---

[9]Berkshire's argument that the special permit provisions of § 180-11(G) are
limited to particular *uses* — thereby excluding relief from dimensional require-
ments — is plainly wrong under the *Emond* case, *supra* at 633-636.