RALPH TITCOMB & others[1] *vs.* BOARD OF APPEALS OF
SANDWICH & others.[2]

No. 04-P-1352.

Barnstable. May 16, 2005. - October 7, 2005.

Present: GREENBERG, BECK, & BERRY, JJ.

*Zoning,* Special permit, Nonconforming use or structure, By-law.

This court concluded that a town's zoning by-law authorized the town's zon-
ing board of appeals (board) to approve by special permit a proposed
change of a pre-existing nonconforming use of a part of a retail store, and
that the board did not exceed its authority or act in an arbitrary or capri-
cious manner by allowing the change. [729-732]

CIVIL ACTION commenced in the Superior Court Department on
October 29, 2002.

The case was heard by *Robert J. Kane,* J.

*Jonathan D. Fitch* for Christy's of Cape Cod, Inc., & another.

*Jane E. Estey* for the plaintiffs.

GREENBERG, J. Upon review, under G. L. c. 40A, § 17, of a
grant by the board of appeals of Sandwich of a special permit
for change or alteration of an existing nonconforming use under
the Sandwich zoning by-law, a judge of the Superior Court
concluded that the board's decision disclosed an error of law. In
addition, the judge concluded that the proposed use would be
substantially more detrimental than the existing nonconforming
use to the neighborhood. He reversed the board's grant of the
special permit to the defendants, and the defendants appeal.

1. *Background.* We set the scene, based on stipulations of the
parties and findings by the Superior Court judge. Defendant

---

[1] Nancy Titcomb, Gerald Brickley, Miriam Brickley, Thomas Reilly, Rose
Reilly, Karyn Gray, and Robert King, as trustee of Beehive Realty Trust.

[2] Christy's of Cape Cod, Inc.; Christy's Realty, LLP.

Christy's Realty, LLP (Christy's), is a limited partnership controlled by Christopher Mihos and is the entity that owns the locus, a 123,544 square foot parcel of land and a commercial building abutting Cape Cod's historic "Cranberry Highway" (Route 6A). The building itself is an improved clapboard structure containing 2,890 square feet of retail space on the first floor and two residential apartments on the second floor. Before the establishment of the R-2 residential zoning district by virtue of a zoning by-law adopted by Sandwich in 1973, the prior owner operated a "proverbial country-style general store" on the first floor of the premises. In the late 1970's, the store was described as a combination butcher shop and grocery store, offering various foodstuffs, fresh produce, and baked goods, some of which were prepared on the premises. At some point, barbequed chickens were also prepared on the premises.

Surrounding the locus in the area of Route 6A are several residences which, as permitted by the Sandwich zoning by-law, contained pre-existing nonconforming uses, including a dentist's office and a woodworking business. Nearby is a small hotel, a gas station, several restaurants, an animal hospital, and a few other commercial establishments. In essence, although the area was zoned residential in 1973, there remain a significant number of commercially utilized properties.

The locus is situated across from Ploughneck Road, which ends in a T intersection on the north side of Route 6A. The owner currently maintains two access driveways, one directly across from Ploughneck Road and one further west on Route 6A. Traffic on Route 6A at or near the locus is relatively heavy. In the early morning, school buses pick up children from the neighborhood at and opposite the intersection of Ploughneck Road and Route 6A and transport them to various schools. In the afternoon, the children are dropped off in the same area, where they are picked up by their parents.

Christy's, in its application for a special permit, sought permission to alter a pre-existing nonconforming use of the premises as a retail convenience store and food market, and to add, as an additional use, a "Dunkin' Donuts" take-out operation. The basic plan submitted to the board proposed an extension of use from self-service to counter service for bakery and coffee products.

The parties agree that the take-out operation constitutes a restaurant under the town by-law. Christy's also sought to improve safety conditions by modifying vehicular access to and from the existing parking lot by eliminating the easterly driveway, the driveway directly opposite the intersection of Ploughneck Road and Route 6A. Nothing was proposed that would change the footprint of the store, and in most material respects, the plan complied with setback and sideline dimensional requirements of the by-law. Nor was there any request to establish a drive-through window, which would have complicated the traffic pattern to and from the building.

At an initial public hearing on the defendant's application in June of 2002, a growing cadre of abutters and neighborhood residents registered objections, arguing that the potential increase in traffic, combined with the number of turns into and out of the locus, would not be ameliorated by the defendants' proposed improvements. There were dueling traffic studies, one by Jennifer Conley of Conley Associates, who had conducted many traffic studies at other Dunkin' Donut locations. She opined that the addition of the Dunkin' Donuts operation within the store would have minimal impact upon the existing volume of traffic to the locus. As might be expected, individual opponents of the defendants, based on a traffic study done at their behest by Carlson Consulting Associates, disagreed with Conley's analysis.

Public hearings were held on the revised application on July 9 and August 13, 2002.[3] The board allowed the application for a special permit to alter the prior nonconforming use, imposing significant conditions regarding, among other things, hours of operation and change in site access and additional parking. Critically, the board found that the proposed extension, as conditioned, would not be "substantially more detrimental than the existing nonconforming use." Subsequently, the plaintiffs

[3]An initial application for a special permit was filed on October 5, 2000, with the Sandwich zoning board. After hearings, that application was denied, and pursuant to G. L. c. 40A, § 17, that denial was appealed to the Superior Court. Prior to trial, the parties filed a joint motion to remand the matter to the Sandwich board of appeals. That motion was allowed, and the defendants filed a revised application.

brought this action seeking to annul the grant of the special permit.

Boiled down to its essence, the complaint alleges that the board exceeded its authority and acted in an arbitrary and capricious manner by allowing a substantial change in the existing nonconforming use in violation of G. L. c. 40A, § 6, and the Sandwich zoning by-law. In particular, the plaintiffs took issue with the board's reliance on traffic data that failed to take into account the close proximity of the intersection of Ploughneck Road and Route 6A to the site. They claimed that the situation posed a safety hazard because of the increased vehicular traffic that would result from an increase in customers generated by the Dunkin' Donuts portion of the store. They also claimed that the defendants' revised plans did not contain adequate parking spaces and that members of the public did not have an opportunity to review those plans.

A Superior Court judge, hearing the matter de novo, *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 558-559 (1954), held hearings over a two-day period and annulled the board's decision. Under the standard test, see *Powers* v. *Building Inspector of Barnstable*, 363 Mass. 648, 653 (1973),[4] the judge determined, and the parties agree, that the change in use that the defendants sought was not covered by the exemption granted to pre-existing nonconforming uses under G. L. c. 40A, § 6. He then determined that a variance, not a special permit, was required. Finally, "[f]or purposes of providing a complete record," the judge determined that the record before the board was incomplete and, therefore, the board's analysis of traffic impacts was arbitrary. Accordingly, he found that the board was unable to assess whether the change in use would not be "substantially more detrimental than an existing nonconforming use to the neighborhood." G. L. c. 40A, § 6. The judge, however, failed to

---

[4]*Powers* sets forth the following three-part test for determining when a current or proposed use fits within the exemption granted to pre-existing nonconforming uses: (1) whether the use reflects the nature and purpose of the use prevailing when the zoning by-law took effect; (2) whether there is a difference in the quality or degree or character, as well as the degree of use; and (3) whether the current use is different in kind in its effect on the neighborhood. *Id.* at 653, citing *Bridgewater* v. *Chuckran*, 351 Mass. 20, 23 (1966).

address adequately the town's zoning by-law in his decision. See Bobrowski, Handbook of Massachusetts Planning Law § 6.03 (2d ed. 2002).

2. *Analysis.* Aside from commenting on the safety issues, the judge, in his memorandum of decision, suggested without elaboration that the board's decision was "based on a legally untenable ground" because, as noted above, a variance was required. Thus, we first consider whether the Sandwich zoning by-law authorizes the board to approve by special permit the proposed change of a pre-existing nonconforming use of a part of the defendants' retail store.

"*Blasco* v. *Board of Appeals of Winchendon*, [31 Mass. App. Ct. 32, 33 (1991)], indicates that nonconforming uses may be changed or substantially extended only where the local ordinance or by-law specifically authorizes those practices. The [local zoning authority] is free to liberally allow such changes or to prohibit modification. [*Id.* at 39.] Resort to [the first two sentences of G. L. c. 40A, § 6,[5]] is not appropriate if the local regulations [contain no authority to permit changes or modifications of existing nonconforming uses]." Bobrowski, Handbook

---

[5]The first two sentences read in pertinent part as follows:

"Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun . . . but shall apply to any change or substantial extension of such use. . . . Pre-existing nonconforming structures or uses may be extended or altered, provided that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood."

In *Rockwood* v. *Snow Inn Corp.*, 409 Mass. 361, 363-365 (1991), the Supreme Judicial Court resolved the apparent ambiguity created by the two sentences by ruling that the first and second sentences when read together permit extensions or changes to nonconforming structures if (1) the extension or changes themselves comply with the ordinance or by-law and (2) the structures as extended or changed are found not substantially more detrimental to the neighborhood than the preexisting nonconforming structure or structures. *Id.* at 364. In *Cox* v. *Board of Appeals of Carver*, 42 Mass. App. Ct. 422, 426 (1997), relying on *Rockwood, supra,* we reversed the grant of a special permit by the board of appeals that would have permitted an extension of a mobile home park because that extension did not comply with the 100-acre area requirement under the town's zoning by-law.

of Massachusetts Planning Law § 6.04[A]. See *Blasco, supra* at 34 (the by-law prohibited uses not specifically permitted, and the exception to that by-law did not include changes to uses of land); *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473 (1986) (upholding a change of a nonconforming use to another nonconforming use where the local by-law, despite some ambiguities, was interpreted to permit the change). See also *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 223-224 (1982) (suggesting that the plaintiff seek a special permit since the by-law was amended to permit changes to nonconforming· uses and the new use would not conflict with the by-law).

Here, the by-law that deals with modifications of prior nonconforming uses is not silent. Sandwich has chosen in detailed language not to prohibit them, but to allow the local zoning authority to regulate such changes by special permit. In particular, the by-law sets out restrictions on the subject. Using the language that mirrors G. L. c. 40, § 6, section 2420 of the by-law authorizes a special permit for a change or alteration of a pre-existing nonconforming use "only if the special permit granting authority finds that the proposed change . . . is not substantially more detrimental to the neighborhood than the existing nonconforming use." In addition, the by-law spells out two other limiting conditions not found in the statute. The second paragraph of section 2420 restricts the amount of land subject to change and, most relevant here, requires the board to screen or review any new parking that may be proposed as a result of the change in use. Finally, the section of the by-law setting forth use regulations specifically exempts from its purview section 2420. In dealing with the subject, the language of the by-law unequivocally rejects the concept that nonconforming uses or structures must either fade away or remain static.

We turn then to the question whether the defendants' proposed change of use of a part of the premises meets the terms of the Sandwich by-law. We start with the proposition that "[a] zoning board of appeals is entitled to 'all rational presumptions in favor of its interpretation of its own by-law, [provided] there [is] a rational relation between its decision and the purpose of the regulations it is charged with enforcing.' " *Building Commr.*

*of Franklin* v. *Dispatch Communications of New England,* 48 Mass. App. Ct. 709, 713 (2000), quoting from *Fafard* v. *Conservation Commn. of Reading,* 41 Mass. App. Ct. 565, 572 (1996).[6]

Here, the judge exclusively focused on the supposed fallibility of the defendant's expert's analysis of traffic volume and attendant safety risks. He failed to take into account other relevant factors that the board relied on in making its finding that the requested change was "not substantially more detrimental than [the] existing nonconforming use." Those factors include, for example, that all food items, except for coffee, would be prepared off-site; that there was no seating for in store consumption of the food sold; that 380 square feet of the approximately 2,890 square feet of the first floor of the building would be devoted to the retail "vendor/restaurant" use; that, in compliance with the by-law, new parking for coffee "take-out" customers would be screened from abutters and from the surrounding streets; and that, as recommended by Sandwich's traffic engineer, there would be one rather the two access driveways to the store from Route 6A and that the area previously used for that eliminated driveway would be landscaped.

As noted, we read the spirit of the Sandwich by-law as permissive, so long as the board is satisfied that the proposed use is not "substantially more detrimental than the existing nonconforming use to the neighborhood." See, e.g., *Murray* v. *Board of Appeals of Barnstable,* 22 Mass. App. Ct. at 475, 477-481 (grant of permit to transform inn to apartment building where by-law was permissive; new use did not conflict with by-law, and board made necessary finding). See also *Walker* v. *Board of Appeals of Harwich,* 388 Mass. 42, 53 (1983) (grant of permit to convert motel to residential time-share condominiums where general prohibition of uses not specifically permitted was not controlling because of exception in by-law for changes of nonconforming uses by special permits, and board made requisite finding), superseded on other grounds by St. 1996,

---

[6]A reviewing judge's authority, if he or she disagrees with the board's findings and if the problem could be remedied, would be limited to remanding the application to the board for further consideration in light of the judge's opinion. See *Berkshire Power Dev., Inc.* v. *Zoning Bd. of Appeals of Agawam,* 43 Mass. App. Ct. 828, 833 (1997); *Duteau* v. *Zoning Board of Appeals of Webster,* 47 Mass. App. Ct. 664, 666 (1999).

c. 358, § 8, as discussed in *Herman* v. *Home Depot*, 436 Mass. 210, 215 (2002). Although the judge here concluded that the traffic analysis prepared by the defendants' expert was incomplete and thus foreclosed the board from assessing the delays and dangers faced by drivers attempting to merge onto Route 6A from Ploughneck Road, we hold that, in light of the factors cited above, it is "the board's evaluation of the seriousness of the problem, not the judge's, which is controlling." *Copley* v. *Board of Appeals of Canton*, 1 Mass. App. Ct. 821 (1973). See *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. at 560; *Cliff* v. *Board of Health of Amesbury*, 343 Mass. 58, 62 (1961).

The final judgment is reversed, and a judgment is to be entered that the October 10, 2002, decision of the board allowing the special permit did not exceed its authority.

*So ordered.*