JOHN J. DURKIN, JR. *vs.* BOARD OF APPEALS OF FALMOUTH.

Barnstable.  November 12, 1985. — January 21, 1986.

Present: BROWN, CUTTER, & DREBEN, JJ.

*Zoning,* Governmental use, Nonconforming use or structure. *Words,* "Nonconforming."

Federal use of certain land and the building thereon for a post office, although constitutionally immune from zoning regulation by a town, could nevertheless be a lawful "nonconforming" use for purposes of language in the town's zoning by-law providing for the issuance of special permits for alteration of nonconforming uses, with the result that, in the circumstances, the board of appeals was mistaken in determining that it lacked authority to grant the landowner's application for a special permit to convert the former post office building to business and professional offices. [452-454]

CIVIL ACTION commenced in the Superior Court Department on October 16, 1984.

The case was heard by *Augustus F. Wagner, Jr.,* J., on a motion for summary judgment.

*Duane P. Landreth* for the plaintiff.

*Robert Sweeney Troy,* Special Town Counsel, for the defendant.

CUTTER, J. Durkin owns over 22,000 square feet of land (the locus) in Falmouth (the town). The locus now lies in a residential zone, but is adjacent to a business zone. In 1959 the area had been classified as an agricultural zone. The area was changed to a residential zone in 1966.

In 1959, prior to the construction on the locus of a one-story building (to cover an area thirty-six feet deep and forty-six feet wide), the then owner applied for a building permit for a structure to be used as the North Falmouth post office, appar-

ently under a lease to the United States from the then owner.[1] The record does not disclose the precise character of the Federal government's occupancy. In any event, the locus has been used for about a quarter of a century as a post office, with an adjacent paved parking space, loading dock, and related commercial-type facilities.

The town zoning by-law in 1959 allowed in an agricultural zone structures for "[a]ll municipal purposes of the town, county, or commonwealth, including the administration of government" but did not mention specifically use by the Federal government. See *Ouellet* v. *Board of Appeals of Dover,* 355 Mass. 77, 78 (1968), which construed narrowly the term "municipal" as used in a particular zoning by-law as "local as distinguished from national or State" and rejected an interpretation of "municipal" in that by-law as essentially equivalent to "public." No objection by the town, however, to the use of the locus as a post office was made in 1959, perhaps because it was assumed that zoning laws could have no application to the Federal use of the locus for a proper governmental purpose.

Durkin negotiated in late 1983 and early 1984 for the purchase of the locus. He was informed erroneously by the clerk of the town's zoning board of appeals that the locus was in a business zone. The assessors' department informed him that the locus was classified and taxed as commercial property. He purchased the locus in April, 1984. Because the post office use could not be terminated as rapidly as Durkin had anticipated, he decided to convert the basement of the building for use as a wholesale sales office for Durkin's commercial decorating supply business and planned that the main post office area later would be converted to office space.

He applied to the town's zoning board of appeals for a special permit to convert the building on the locus to business and professional offices and to construct an exterior stair entrance to the basement. For this application, he relied on § 1222 of the present town zoning by-law which reads: *"Pre-existing,*

---

[1] A search by Durkin and town officials of the town records revealed no 1959 grant of any zoning variance or special permit. It disclosed only a 1959 building permit for an "office building [p]ost [o]ffice."

*nonconforming* structures or *uses* may be extending [*sic*], altered, changed or rebuilt only by [s]pecial [p]ermit from the [b]oard of [a]ppeals. Any such rebuilding, change, extension or alteration shall not be more detrimental than the existing nonconforming use to the neighborhood" (emphasis supplied), subject to exceptions, no one of which seems pertinent here.

The board denied the special permit on the ground that it did "not have the power . . . to grant" it because there was no "pre-existing nonconforming use . . . lawfully in existence prior to the change in the zoning by-laws that rendered it nonconforming."[2] The board took the position that the Federal government is "immune from zoning regulations when . . . land is leased to the government by a private landowner" and, in effect, that a constitutionally immune use could not be treated as a lawful nonconforming use.

From the board's denial on September 20, 1984, of the special permit, Durkin claimed an appeal to the Superior Court under G. L. c. 40A, § 17, as amended through St. 1982, c. 533, § 1. After the completion of pleadings, Durkin and counsel for the board each moved for summary judgment, which was granted for the town by the motion judge without any statement of his reasons. Durkin has appealed from the judgment.

We are of opinion that the board too narrowly interpreted the term "nonconforming" (with respect to uses of the locus) in appraising its powers under § 1222 of the town's by-law. A use of the locus under a lease for a proper Federal purpose may have been immune from *application* of the town by-law. See e.g., *Thanet Corp.* v. *Board of Adjustment of Princeton,*

---

[2] The board in its decision stated, apparently erroneously, that the locus "has been residentially zoned since the adoption of zoning." This is a clear misunderstanding of the facts, for the locus appears to have been in an agricultural zone prior to 1966. Despite the *Ouellet* case, 355 Mass. 77 (1968), we think that it was uncertain whether in 1959 a post office use was forbidden in an agricultural zone or whether, if the Federal immune use then had terminated, any equivalent of the post office use would have become nonconforming at that time. The *Ouellet* decision purported only to interpret a particular town by-law. We cannot be sure that the board was not misled in some degree by its misapprehension of the zoning history of the locus.

108 N.J. Super. 65, 66-67 (1969). If in substance, however, a post office use was not a permitted use within the particular zoning district because *immune,* it still would have been a use of the locus forbidden by the by-law, and thus "nonconforming" in fact. This would have been so even though the by-law could not have been enforced against it because of the Federal immunity. If, in 1959, post office use could be regarded as a "municipal" use under the then existing zoning by-law, the use became nonconforming when in 1966 the zoning of the locus was changed to residential. If the use beginning in 1959 could then have been regarded as nonconforming, but immune because of the Federal use, it was a lawful use. The use, so this record shows, has continued steadily since 1959, under a building permit then issued.

By virtue of the second paragraph of G. L. c. 40A, § 7 (now as amended by St. 1984, c. 291), it is provided that "if real property has been improved and used in accordance with the terms of the original building permit issued by a person duly authorized to issue such permits, no action, criminal or civil, the effect . . . of which is to compel the abandonment, limitation or modification of the use allowed by said permit or the removal [or] alteration . . . of any structure erected in reliance upon said permit by reason of any alleged violation of the provisions of this chapter, or of any ordinance or by-law adopted thereunder, shall be maintained, unless such action . . . is commenced and notice thereof recorded in the registry of deeds for each county or district in which the land lies within six years next after the commencement of the alleged violation of law." We interpret this provision[3] as protecting the use of the locus pursuant to the 1959 building permit (and perhaps any uses reasonably similar in character to the post office use and not more detrimental to the community) from enforcement of the zoning by-law, unless proceedings are initiated within six years after the beginning of an alleged violation and there

---

[3] For a discussion of present G. L. c. 40A, § 7, see Healy, Massachusetts Zoning Practice Under the Amended Zoning Enabling Act, 64 Mass.L.Rev. 157, 160, 163 (1980). See also the general discussion in *Vokes* v. *Avery W. Lovell, Inc.,* 18 Mass. App. Ct. 471, 485 n.23 (1984).

is compliance (not shown by this record) with the other provisions of § 7.

The Zoning Act thus gives a limited protection to uses permitted pursuant to a building permit. Such protection may be, of course, especially appropriate when, as the present record shows, the noncompliance is not highly significant.[4]

The case is to be remanded to the board for wholly new consideration of Durkin's application (a) in view of the board's confusion in its decision now under review about the history of the zoning regulations applicable to the locus, and (b) because of the board's unduly restrictive interpretation of what constitutes a nonconforming use in the circumstances here presented. Because there is no very directly applicable Massachusetts authority, the confusion in the board's decision is understandable. References to some generally relevant (but not controlling) authorities are set out in the Appendix.

The judgment is reversed. The Superior Court is to enter an order that the board (after further notice and hearing) shall reconsider its decision on Durkin's application for a special permit and make new findings, appropriately taking into account what is said in this opinion. Neither party shall have costs of this appeal.

*So ordered.*

---

[4] A letter of Durkin, of July 6, 1984, attached to his application for a special permit, points out various reasons for deciding that the uses proposed by him for this former post office on the locus (of 22,000 square feet) may be even less injurious to the community (especially the immediately adjacent business area) than the post office and will generate less traffic. An affidavit of Durkin (in support of his motion for summary judgment) also suggests that he had made substantial expenditures for improvements of the locus in reliance (a) on misinformation given to him by a town official, and (b) on a building permit (dated April 26, 1984) from the then town building commissioner. We assume that the town is not estopped by the mistakes of these town representatives. Nevertheless, the obscurity of the zoning background (see note 2, *supra*) may have contributed to them.

APPENDIX.

*Some Authorities Discussing Local Zoning Problems Affecting Land Formerly Owned, Used, or Leased by the Federal Government or by a Government other than that Responsible for the Zoning.*

*Village on the Hill, Inc.* v. *Massachusetts Turnpike Authy.,* 348 Mass. 107, 118-119 (1964), briefly discussed the applicability of local zoning provisions to land of the turnpike authority no longer needed in its operations, but made no reference to immunity of Federal land use. General consideration of the applicability of local zoning to Federal enterprises is found in *United States* v. *Chester,* 144 F.2d 415 (3d Cir. 1944); *Crivello* v. *Board of Adjustment of Middlesex,* 183 F. Supp. 826, 828-829 (D.N.J. 1960); *Groton* v. *Laird,* 353 F. Supp. 344, 348-352 (D. Conn. 1972); *King Resources Co.* v. *Environmental Improvement Commn.,* 270 A.2d 863, 868-870 (Me. 1970, prior Federal use in existence when State regulation came into effect as prior lawful use); *Thanet Corp.* v. *Board of Adjustment of Princeton,* 108 N.J. Super. 65 (1969, immunity of leased post office from local zoning); *Lane County* v. *Bessett,* 46 Or. App. 319, 326-328 (1980, zoning of Federal property without applying regulation to Federal operation; nonconforming use by Federal government at time of purchase by private owner not shown); *Coventry* v. *Glickman,* 429 A.2d 440, 442-444 (R.I. 1981, general consideration of applicability of State regulation to Federal military housing units after purchase by private owner). See also *State* v. *Stonybrook, Inc.,* 149 Conn. 492, 495-500 (1962); 8 McQuillin, Municipal Corporations § 25.16 and cases cited (3d ed. 1983); 2 Anderson, American Law of Zoning § 12.07 (2d ed. 1968 & Supp. 1985).