Fremont-Smith, J.
In this case, the plaintiff is a resident of Perkins Avenue in Oak Bluffs who has appealed from a decision of the building inspector refusing to enforce the zoning by-laws so as to prohibit a commercial use in a residential area, and from the Zoning Board of Appeals’ (“ZBA”) decision upholding the building inspector’s action. Based upon all of the credible evidence at trial, the Court makes the following findings, rulings, and order.
The land and building on Pacific Avenue in the Town of Oak Bluffs (“the site”) which the defendant now leases to Browning Ferris, Inc. (“BFI”), is located in a residential zone pursuant to the Town of Oak Bluffs zoning by-laws, which were accepted by the Attorney General of the Commonwealth of Massachusetts on February 10, 1948. No business or commercial use is permitted in this residential zone.
The site was originally owned by the Town of Oak Bluffs, which used the building as a school gymnasium.
On or about May 7, 1958, the town sold one parcel of the site to Everett A. Rogers (“Rogers”), whose publically stated purpose, according to a newspaper article, was to use the building as a “warehouse.”
*114 Without any permit, Rogers then relocated his trucking business to the site. Rogers' trucking company was in the business of delivering food and beverages to the restaurants and stores on Martha’s Vineyard and collecting rubbish for delivery to the town dump. Any rubbish and garbage collections were required by the town to be completed before 7:00 a.m. each morning, so that occasionally a loaded vehicle would be parked at the site until the load could be delivered to the dump. Unloaded trucks were parked overnight at the site. There was no permit authorizing this commercial operation, which was in clear violation of the zoning by-laws. On November 23, 1965, Rogers applied for a building permit to place “asphalt shingles” on the building, the purpose of which was for “storage and garage."[1]
In 1975, Rogers applied for a building permit to build a wood shelter for a loading platform, which he described as “just a canopy to cover existing platform." Although no building permit was placed in evidence, a list of building permits for calendar year 1975 lists such a permit.
In 1979, Rogers acquired from the Town of Oak Bluffs a lot adjacent to the site, which was then paved and where trucks were then stored. No permit was obtained for this alteration and use of the property.
In 1988, Rogers became ill, discontinued his trucking operations, and sought a purchaser for the site. In the same year (1988), Frank M. Fenner, Jr. (“Fenner”), wrote the building inspector that he intended to purchase the site for “trucking operations, dry storage, parking, storage and repairs to trucks and other equipment and operation of a facility and business for recyclable materials, including can, boxes, paper products, plastic products, bottles and others and rental space,” which he alluded to as the “prior operating conditions of the Rogers family.” He went on to state, “I hope to centralize my business there and put a heavy effort into the collection and transferring of recycled materials. I intend to make repairs there and have dry storage.”
Although the proposed uses that he described in his 1988 letter expanded the activities previously carried on by Rogers, and appeared to be those of a rubbish “facility” as defined in G.L.c. Ill, §150A,[2] there is no evidence that any permit such as that required by the statute was applied-for or granted. To the extent Rogers and his successors in title were operating a rubbish “facility,” they were doing so in violation of G.L.c. Ill, §150A and 310 C.M.R. 19.042(1), as well as in violation of the zoning ordinance.
Rogers died in 1989 and in April 1989, Rogers’ nephew, Richard Mavro, was appointed Building Inspector at about the same time that Fenner purchased the property from the Rogers’ estate for such use. Mavro then proceeded, on July 6, 1989, to issue a building permit to Fennco Nominee Realty Trust (“Fennco,” who had just purchased the site from Mavro’s uncle) to “build or alter a commercial building on Pacific Avenue to be occupied for commercial use . . . subject to all applicable codes and ordinances.”[3] In 1989, Fenner also applied for a building permit to install an “8 [foot] fence around Lot #271 for screening and security with one strand of barbed wire.” A permit for a “fence” issued on May 19, 1989 for “storage and security,” which was also expressly “subject to all applicable codes and ordinances.”
Although Rogers’ trucking operations at the Pacific Avenue location had included some rubbish collection, the Court finds, based on all of the credible evidence, that the detrimental impact upon the residential neighborhood which had at first been relatively small, grew incrementally over the years. The smell of garbage, the fumes from motor vehicles, and traffic impact were at first minimal, increased under Rogers, and greatly increased after the site was sold to Fenner in 1993 and was leased to BFI for use as a rubbish transfer station.[4]
In May 1989, Fenner had brought his company’s recycling, baling, and crushing operations to the site. In May 1993, the towns of Oak Bluffs and Tisbury asked Fenner to operate the towns’ recycling operations at the site, in addition to Fenner’s own operations. These operations by Fenner and BFI greatly increased traffic to the site, and resulted in very noisy operations, which greatly irritated the neighbors of the property. These new and expanded operations did not cease until 1996.[5] Although some of BFI’s and Fenner’s most noxious recycling operations at the site have, since 1996, been relocated to the town dump, Fenner and BFI continue to engage in substantial commercial activities at the site in violation of the zoning code. A large number of trailer-tractors continue to come in and out of the site at all times of the day and night, and are loaded, unloaded, parked, washed, and repaired at the site, to the detriment of the residential neighbors.
Fenner concedes that he has received no zoning variance or special permits from the ZBA for a commercial operation, but contends that BFI’s use of the premises, while not authorized by the Zoning code, is “grandfathered” as a “nonconforming use.” The commercial use of the site, however, was certainly not present prior to the 1948 enactment of the Zoning ordinance, so the use is not “grandfathered” within the meaning of G.L.c. 40A, §6. Defendant contends, however, that its use of the site is “grandfathered” under G.L.c. 40A, §7 because no suit was instituted within six years of the granting of various building permits.
An examination of the permits does not bear this out. The scope of the 1965 permit related only to repairing the roof of the building, the scope of the 1975 permit related only to the building of a canopy, and the 1989 permits related only to the alteration of a “commercial building on Pacific Avenue and Perkins *115 to be occupied for commercial use” and to the construction of a fence for “screening and security.” Not only are the 1989 permits in clear contradiction of the zoning ordinance, insofar as they purported to permit a “commercial” use in a residential zone in the guise of a building permit, but are also of questionable legality in view of the personally conflicted position of the building inspector discussed above with respect to the site.
Each of the permits related to the construction or alteration of a physical structure or to the commercial use of a structure on the site. It has been determined that a building permit for a physical alteration of a building does not authorize a non-permitted use of the premises, or even of the building itself, if that use was not clearly contemplated by the permit. Lord v. Zoning Board of Appeals of Somerset, 30 Mass.App.Ct. 226 (1991). Moreover, to the extent that any building permit could possibly be construed to permit the original use made of the site by Rogers for a trucking operation, the Court finds, as noted above, that the scope of the illegal use was constantly expanded, first by Fenner and then by BFI, and that in May 1993, Fenner and BFI, at the request of Tisbury and Oak Bluffs, commenced recycling operations at the property which admittedly expanded the property’s hours, greatly increased traffic to the site, and resulted in very noisy operations which operations greatly irritated the neighbors of the property. Accordingly, even if the building permits impliedly authorized a commercial use of any part of the site, the expanded use of the site was not within the protection of the statute because it was not “used in accordance with the terms of the original building permit,” but within six years of the filing of this action in 1997, was used for a purpose not similar in character to the use contemplated in the original building permit, and for a purpose more detrimental to the neighborhood. See Durkin v. Board of Appeals of Falmouth, 21 Mass.App.Ct. 450, 453 (1986).
Although some of these activities, as noted above, have recently been removed to the town dump, the Court finds that, even today, the current use by BFI is different in quality, character and degree from the time when Rogers ran the operations, and that there has been a greater detrimental effect on the neighborhood, Town of Bridgewater v. Chuckran, 351 Mass. 20, 23 (1966), which has included a change in the type of use from general freight to that involving substantial rubbish and garbage collection and storage, with increased impact on the neighborhood by reason of noxious odors, traffic and noise. Powers v. Building Inspector of Barnstable, 363 Mass. 648, 653 (1973).
Although in its February 5, 1997 decision the ZBA gave its blessing to the continued nonconforming use of the site by Fenner and BFI based on an erroneous finding that the present use did not differ from the past use of the site by Rogers, it also admitted, in its decision, that certain activities clearly had increased the scope of the illegal use and had more adversely impacted the neighborhood so that they should be prohibited. These, the ZBA found, included “cardboard bailing, trash compacting on transfer machines, and other mechanical or hydraulic recycling activity.” The ZBA thus justified the continued nonconforming use of the site at least in part on the fact that it was now prohibiting the very illegal activities which the town had encouraged and requested Fenner and BFI to undertake in the first place.
Where, as here, the Court finds that the scope of any building permit which might possibly be construed to contemplate a nonconforming use has been substantially exceeded, the question is raised whether any part of the nonconforming use for which a permit was obtained (such as the commercial use of the building) has been extinguished, or whether the original nonconforming use, to the extent it was originally intended, maybe continued. The Court concludes that the extinguishment of all of a nonconforming use, including any part thereof originally contemplated by a building permit, is warranted where the nonconforming use has been substantially extended. Such a result is consistent with public policy, Blasco v. Board of Appeals of Winchendon, 31 Mass.App.Ct. 32, 39 (1991) (“public policy generally favors the eventual elimination” of nonconforming uses), with G.L.c. 40A, §6 (zoning regulations “shall apply to any change or substantial extension of [a nonconforming] use"), and with the Oak Bluffs zoning by-laws (section 1-6 of which specifies that no nonconforming use shall be changed, modified or extended except after a finding by the ZBA following a public hearing determining that it will not result in a use injurious to the public or more detrimental than the use which previously existed). See also Powers, supra; Ka-Hur Enterprises, Inc. v. Zoning Board of Appeals of Provincetown, 40 Mass.App.Ct. 71, 74 (1996), aff'd., 424 Mass. 404 (“to preserve the protection afforded a preexisting, nonconforming use under G.L.c. 40A, §6, any subsequent use of the property must not constitute a change or substantial extension of the nonconforming use”).
Defendant further argues that, in any event, the town is estopped from enforcing the zoning ordinance, in view of its history of condoning and abetting the violations, which it contends were always open and obvious. Specifically, Fenner contends that he relied on his 1989 letter to the building inspector, which described his intended use of the site, and was told both by the building inspector and by town counsel that the activities were allowed by c. 40A, §6 on which advice he reasonably relied to purchase the property. The Court does not agree. Assurances from the building inspector were not reasonably relied upon in view of the building inspector’s conflicted situation regarding the site, discussed above, and the fact that, in any event, the building inspector was not qualified to *116 render a final legal opinion.[6] Town counsel’s opinion letter dated June 26, 1984 to the then-building inspector, moreover, suggested that Rogers’ use of the “two new residentially zoned parcels is not [grandfathered] unless the real property has been improved and used in accordance with a building permit and six (6) years has elapsed since said permit was issued” (emphasis added), thus raising an important caveat. The Court finds that the property was not used in accordance with the scope of any building permit, in that the actual uses of the premises have, as discussed above, increasingly exceeded the scope of any such permits.
Thus, to the extent Fenner’s and BFI’s operations at the site (which gradually increased, particularly from 1993 to 1996) became increasingly noxious and detrimental to the neighborhood, they could not have been and were not undertaken in reasonable reliance upon a zoning official’s decision “in circumstances that make it unjust and unreasonable to upset” the zoning official’s prior decision. See Chilson v. Zoning Board of Appeal of Attleboro, 344 Mass. 406, 409 (1962).
Finally, defendants contend that plaintiffs failure to file notice of the suit with the Registry of Deeds, as required by G.L.c. 40A, §7, is fatal to the lawsuit. The law, however, is otherwise. See Vokes v. Avery W. Lowell, Inc., 18 Mass.App.Ct. 471, 483 n.20 (1984) (failure to file required registry notice not fatal where, as here, no prejudice was shown to anyone from lack of such notice); cf. Pierce v. Board of Appeals of Carver, 369 Mass. 804, 810-12 (1976) (delay in service of process of Zoning Board members not fatal where, as here, no prejudice from delay was shown).
ORDER
The case is remanded to the Oak Bluffs Zoning Board of Appeals, whose members are ORDERED to take all actions as shall be necessary to enforce the prompt cessation of all commercial and non-residential use of the entire site and of the building located thereon. This order, however, is stayed for ninety (90) days in order to provide BFI with an opportunity to relocate its activities and to provide Fenner with an opportunity to ascertain a residential use for the site.

 Although no such building permit was placed in evidence, a list of “1965 building permits” lists such a permit.

 G.L.c. 111, §150A defines “facility” as “a sanitary landfill, a refuse transfer station, a refuse incinerator rated by the [Department of Environmental Protection] at more than one ton of refuse per hour, a resource recovery facility, a refuse composing plant, a dumping ground for refuse or any other works for treating, storing, or disposing of refuse.” “Refuse" is defined as “all solid or liquid' waste materials, including garbage and rubbish ...” (Emphasis added). The statute has, at all relevant times, prohibited the operation of such a facility unless a permit has been obtained after a public hearing.

 For reasons unexplained, the certificate of occupancy was not approved until April 3, 1991.

 Fenner leased the site to BFI in 1993 for $5,500 per month in rent, which continues today, and became employed by BFI as its manager at the site.

 These facts are not only borne out by the testimony, but are undisputed by the defendant. See “Frank Fenner’s Proposed Findings of Fact and Rulings of Law,” para. 20.

 Where there is an issue with respect to whether there was compliance with the text of a zoning bylaw, it is a matter for interpretation, first by the building inspector, then by the board, and, thereafter, by the court. See Dutreau v. Zoning Board of Appeals of Webster, 47 Mass.App.Ct. 664, 668 (1999).