NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1339                                        Appeals Court

GRAHAM GUND & others[1]  vs.  PLANNING BOARD OF CAMBRIDGE
& others.[2]

No. 15-P-1339.

Suffolk.     October 7, 2016. - July 19, 2017.

Present:  Agnes, Maldonado, & Desmond, JJ.

Courthouse.  Zoning, Nonconforming use or structure,
     Governmental use.  Governmental Immunity.  County,
     Municipal zoning by-laws.  Municipal Corporations,
     Governmental immunity, By-laws and ordinances.

Civil action commenced in the Land Court Department on
November 19, 2014.

Motions for summary judgment were heard by Robert B.
Foster, J., and entry of separate and final judgment was ordered
by him.

Mark Bobrowski for the plaintiffs.
Kevin P. O'Flaherty for LMP GC Holdings, LLC.
Vali Buland, Assistant City Solicitor, for planning board
of Cambridge.
Adam Hornstine, Assistant Attorney General, for the
Commonwealth.

---

[1] Michael Hawley, Marie Saccoccio, and Roger Summons.

[2] LMP GC Holdings, LLC, and the Commonwealth.

MALDONADO, J.  The Edward J. Sullivan Court House (court house) was constructed by Middlesex County (county) between 1968 and 1974 on land owned by the county on Thorndike Street in Cambridge (city).  First owned by the county and then, after 1997, by the Commonwealth, the court house was immune from the local zoning ordinance when it was built, and in the ensuing years when it housed the Superior Court, the Cambridge Division of the District Court Department, and associated court offices through 2009, and a jail facility through 2014.  Defendant LMP GP Holdings, LLC (developer), is a private entity that has entered into a purchase and sale agreement with the Commonwealth to purchase the court house and has taken steps to obtain approvals to redevelop it.  The sole issue on appeal is whether the court house, when it loses its governmental immunity by transfer to the developer, will constitute a preexisting nonconforming structure under G. L. c. 40A, § 6, and § 8.22.2(a) of the relevant zoning ordinance such that redevelopment may be approved by special permit.[3]  A judge of the Land Court concluded on summary judgment in a well-reasoned decision that c. 40A,

---

[3] Whether the redevelopment meets the special permit criteria is not at issue before us.

§ 6, and § 8.22.2(a) of the zoning ordinance govern the developer's efforts to redevelop the property, and we affirm.[4]

Background. The background facts are not in dispute and are largely derived from an agreed statement of facts. On October 30, 2014, the planning board of Cambridge (planning board) granted four special permits to the developer authorizing the redevelopment of the court house to include twenty stories and 476,303 gross square feet of office, retail, and multifamily uses.[5] One of the special permits, the only one before us, was issued pursuant to § 8.22.2 of the zoning ordinance, which authorizes alteration of "pre-existing nonconforming structures"

_____

[4] The facts in the record are thin on the plaintiffs' standing to bring this action, but their complaint asserts that they are "parties in interest." See G. L. c. 40A, § 11. Parties in interest entitled to notice under § 11 are entitled to a presumption of standing to appeal from a zoning decision. See G. L. c. 40A, § 17; Marinelli v. Board of Appeals of Stoughton, 440 Mass. 255, 257 (2003). It would appear that the judge was satisfied that the plaintiffs had made a threshold showing of standing. After summary judgment entered regarding the issue before us, the plaintiffs agreed to dismiss the other counts of the complaint and to request final judgment in reliance of the defendants' promise not to challenge the plaintiffs' standing. Such an agreement would not be binding on us were the plaintiffs' lack of standing plainly apparent. See Warrington v. Zoning Bd. of Appeals of Rutland, 78 Mass. App. Ct. 903, 905 (2010) (lack of standing cannot be waived and may be raised at any stage in proceedings).

[5] All existing and proposed uses are permitted as of right in the business B zoning district in which the court house is located; thus, no nonconformity as to use is at issue.

as set forth in the margin.[6]  The zoning ordinance defines nonconforming structure as "[a]ny structure which does not conform to the dimensional requirements . . . or to the parking and loading requirements . . . of this Ordinance for the district in which it is located; provided that such structure was in existence and lawful at the time the applicable provisions of this or prior zoning ordinances became effective."

When it was constructed, the court house complied with zoning ordinance requirements except that it exceeded the allowed floor-to-area ratio.  It now exceeds the floor-to-area ratio by an even greater amount, as the city has since adopted a lower floor-to-area ratio, and it exceeds by 200 feet the eighty-foot height limitation adopted after the court house was built.  The planning board concluded that the court house

---

[6] Section 8.22.2 provides, in pertinent part:

"The following changes, extensions, or alterations of a pre-existing nonconforming structure or use may be granted in the following cases after the issuance of a special permit . . . if the permit granting authority . . . finds that such change, extension, or alteration will not be substantially more detrimental to the neighborhood than the existing nonconforming use.

"a.  In [a Business] District the Board of Zoning Appeal may issue a special permit for the alteration or enlargement of a nonconforming structure, not otherwise permitted in Section 8.22.1 above, or the enlargement (but not the alteration) of a nonconforming use, provided any alteration or enlargement of such nonconforming use or structure is not further in violation of the dimensional requirements in Article 5.000 or the off street parking and loading requirements in Article 6.000."

constitutes a preexisting nonconforming structure as defined in the zoning ordinance and ultimately granted a special permit under § 8.22.2(a) of the zoning ordinance.  On appeal, the Land Court judge granted partial summary judgment to the developer on the narrow issue whether the court house constitutes a preexisting nonconforming structure, and concluded that the planning board acted properly in treating the court house as such.

Discussion.  "We start with the proposition that 'a [board] is entitled to "all rational presumptions in favor of its interpretation of its own by-law, [provided] there [is] a rational relation between its decision and the purpose of the regulations it is charged with enforcing."'"  Titcomb v. Board of Appeals of Sandwich, 64 Mass. App. Ct. 725, 730-731 (2005), quoting from Building Commr. of Franklin v. Dispatch Communications of New England, 48 Mass. App. Ct. 709, 713 (2000).  In addition, while a general goal of zoning is the eventual elimination of nonconforming uses and structures, Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 484 (2012), at the same time, the Zoning Act, c. 40A, § 6,[7] and many local by-laws or ordinances provide

---

[7] General Laws c. 40A, § 6, inserted by St. 1975, c. 808, § 3, provides in pertinent part:

protection to lawful nonconforming uses and structures. Where, as here, a zoning ordinance largely parroted the protections contained in § 6, we said that the "by-law unequivocally reject[ed] the concept that nonconforming uses or structures must either fade away or remain static." Titcomb v. Board of Appeals of Sandwich, supra at 730. Indeed, we have noted that pursuant to the second sentence of § 6, a preexisting nonconforming structure that has lost grandfathering protection because of a proposed reconstruction, extension, or structural change of such structure, or alteration of a structure for its use for a substantially different purpose, "'may be extended or altered' if the proper local authority makes a finding 'that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming [structure or] use to the neighborhood.'" Welch-Philippino v. Zoning Bd. of Appeals of Newburyport, 86 Mass. App. Ct. 258, 261 (2014),

"Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence . . . , but shall apply . . . to any reconstruction, extension or structural change of such structure and to any . . . alteration of a structure . . . . Pre-existing nonconforming structures or uses may be extended or altered, provided . . . that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood."

quoting from <u>Barron Chevrolet, Inc</u>. v. <u>Danvers</u>, 419 Mass. 404, 412 (1995).

The plaintiffs focus their argument that the court house is not a preexisting nonconforming structure on the definition of "nonconforming" in the zoning ordinance and not on the language of c. 40A, § 6.  To be considered nonconforming, the zoning ordinance requires the structure to be "in existence and lawful at the time the applicable provisions of this or prior zoning ordinances became effective."  They contend that when the structure loses its governmental immunity, the planning board was required to look back at the existing floor-to-area ratio requirement in place when the court house was built, and only if the court house met that criterion can it now be considered nonconforming under the zoning ordinance.  In other words, the plaintiffs argue that the only way the court house can be considered a preexisting nonconforming structure is if it complied with the zoning requirements when it was constructed and now fails currently to comply because the city adopted a stricter zoning ordinance since the construction of the court house.

The parties all agree that the court house was immune from the zoning ordinance[8] at the time it was built and at all times since while it has been held and operated by a public entity. See G. L. c. 40A, § 3; County Commrs. of Bristol v. Conservation Commn. of Dartmouth, 380 Mass. 706, 713 (1980); Inspector of Bldgs. of Salem v. Salem State College, 28 Mass. App. Ct. 92, 95 (1989). As such, the court house was immune from the floor-to-area ratio when it was constructed, and the provisions of the zoning ordinance do not become effective as to the court house until the structure loses its governmental immunity, which the parties agree will occur when the property is conveyed to the developer by the Commonwealth. Therefore, the court house will have been properly in existence long before the zoning ordinance becomes effective as to it. In the circumstances, we agree with the planning board's conclusion that the court house becomes a preexisting nonconforming structure when it loses its governmental immunity.

Even if the court house does not meet the literal definition of a preexisting nonconforming structure contained in the zoning ordinance, the case of Durkin v. Board of Appeals of

---

[8] Nonetheless, the structure complied with the zoning ordinance when it was built with the exception of the floor-to-area ratio, discussed supra.

Falmouth, 21 Mass. App. Ct. 450, 452-453 (1986), is instructive.[9] There, a planning board determined it lacked authority to grant a special permit because a constitutionally immune use could not be treated as a lawful nonconforming use under the local by-law. Id. at 452. We rejected the argument, stating that such an interpretation of the local by-law was too narrow. Ibid. We explained that a use permissible because of immunity from application of the local by-law still would have been a use "forbidden by the by-law, and thus 'nonconforming' in fact." Id. at 453. Similarly, to the extent the court house here, strictly speaking, never fully satisfied zoning ordinance requirements, it has always been nonconforming. However, it has always been lawful because the zoning ordinance requirements simply did not apply to it. Ibid. Compare Bruno v. Board of Appeals of Wrentham, 62 Mass. App. Ct. 527, 536-537 (2004) (expiration of six-year limitation period to enforce by-law does

---

[9] The plaintiffs' efforts to distinguish Durkin on its facts are unavailing, as we are persuaded that the analysis is correct when applied to the facts of this case. We recognize that there was some question whether the structure at issue in Durkin was immune from zoning requirements which, in part, required remand. 21 Mass. App. Ct. at 454. However, we answered the question as to the planning board's authority if, upon remand, it determined the structure had been immune. Id. at 453-454. Furthermore, we cannot countenance the plaintiffs' efforts to establish, by citation to the briefs in Durkin, that the facts of Durkin were different from those stated in the published opinion. If there were a material issue with the facts as stated, that was for the parties to address in Durkin and not for this court to reexamine in the context of another appeal.

not convert unlawful nonconforming use into lawful, nonconforming use; it merely prevents town or others from bringing action to enforce by-law).  We discern no meaningful distinction in terms of the protections afforded nonconforming structures in the zoning ordinance between a structure that becomes nonconforming because of a subsequently enacted stricter ordinance and one that becomes nonconforming because of a loss of statutory immunity.  Compare Rourke v. Rothman, 448 Mass. 190, 197-198 (2007) (whether lot became unbuildable because of increase in dimensional requirements or by repeal of exemption from dimensional requirements immaterial when considering whether lot qualified for protection under fourth par. of G. L. c. 40A, § 6).  In Rourke, the Supreme Judicial Court said that focusing on an arbitrary distinction between once-buildable lots based solely on the linguistic mechanism by which they became unbuildable highlights a distinction without a difference.  Id. at 194.

Finally, the case of Mendes v. Board of Appeals of Barnstable, 28 Mass. App. Ct. 527 (1990), does not require a different result.  In Mendes, we held that a use that exists because of a variance issued by a local planning board is not a nonconforming use under c. 40A, § 6.  Id. at 528-529.  We noted that a variance presupposes the prohibition of the use or structure sought and is granted sparingly under demanding

criteria that are difficult to satisfy. Id. at 531. In contrast, the special permit power presupposes the allowance of certain uses, with review by the local permit-granting authority under more flexible criteria. Ibid. We concluded that the Legislature did not intend in c. 40A, § 6, to authorize the expansion of uses having their genesis in a variance by virtue of "the more generous standard applicable to a special permit." Id. at 531-532. A use or structure that is immune from local zoning regulations because it is owned by the government cannot be equated to a use or structure that has been allowed because it meets the strict criteria for a variance. Ibid. A structure lawful because it is immune from zoning regulations is closer to structures that were constructed prior to zoning regulations being adopted.

While we did explain in Mendes, supra at 529-530, that a § 6 use "achieves the status of nonconformity for statutory purposes if it precedes the coming into being of the zoning regulation which prohibits it," we also said the focus is on how and when a use, or structure, became lawful. Id. at 531. The unique facts of this case were not before the court in Mendes. But, applying the so-called "how and when" test articulated in Mendes, we note again that the court house lawfully preceded the application of any zoning regulations to it. When the court house loses its governmental immunity, nothing in the zoning

ordinance or the statutory scheme suggests that the planning board should look back to when the structure was constructed to determine whether it complied with the then-existing zoning ordinance from which it was immune at the time.  Nothing in the statutory scheme suggests that we should treat the court house as if its governmental immunity never had existed.

<u>Judgment affirmed</u>.